# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>ITAÚ UNIBANCO S/A,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case No. 21 Misc. ___ |

## *EX PARTE* APPLICATION OF ITAÚ UNIBANCO S/A FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Itaú Unibanco S/A ("Applicant"), by and through its undersigned counsel, respectfully submits this Application for judicial assistance, pursuant to 28 U.S.C. § 1782, in obtaining documentary and testimonial evidence for use in foreign proceedings. Applicant seeks evidence from (i) TOG Brazil Holdings, Inc ("TOG Brazil"); (ii) Ten Oaks Management, LLC; (iii) Ten Oaks Friar Common Investors, LLC; and (iv) Ten Oaks Friar Series B Investors, LLC (the "Ten Oaks Group") (collectively, the "Respondents"), involved in transactions between Rakuten, Inc; Rakuten USA, Inc; and the Japanese Rakuten companies and operations in Brazil (currently Gencomm group) ("Brazilian Rakuten Group" or "Gencomm Group")[1], especially to obtain information about the background of the *Quota Purchase Agreement*, as detailed in the Declaration of Henrique Rodrigues Forssell ("Forssell Declaration").

---

[1] Brazil Holdings Ltda; Rakuten Brasil Internet Service Ltda; Rakuten Brasil Financial Services Ltda; and Rakuten Brasil Logistics Ltda., undergoing liquidation before the 1st Special Lower Court for Judicial Reorganization and Bankruptcy in the Judicial District of São Paulo, Brazil (the "Bankruptcy Proceeding"). Forssell Decl., ¶ 3

**Introduction and Factual Background**

1.     The facts relevant to this Application are set forth below and in the sworn Forssell Declaration.

2.     Applicant seeks assistance from the United States District Court in and for the District of Delaware in obtaining documentary and testimonial evidence from the Respondents. The Respondents are companies found and transacting business in this District. This documentary and testimonial evidence is necessary and for use in the Bankruptcy Proceeding Forssell Decl., ¶ 3.

3.     Rakuten Group is a Japanese technology conglomerate founded in 1997 that provides web-based services, mainly related to e-commerce, such as purchase and sale of goods on a virtual Internet-based trading platform and other e-commerce solutions. Rakuten Group started its operations in Brazil in 2011, with the acquisition of two Brazilian companies which were named Rakuten Brazil Holdings Ltda and Rakuten Brasil Internet Service Ltda. Subsequently, the Rakuten Group expanded its Brazilian operation with the incorporation of the companies Rakuten Marketing Brazil Ltda, on June 2013; Rakuten Brasil Financial Services Ltda, on April 2015; and, finally, Rakuten Brasil Logistics Ltda, incorporated on October 2017 *Id*., ¶ 4.

4.     During the period in which the Rakuten Group operated in Brazil, several cash injections were made in the Brazilian Rakuten Group, mainly by the Japanese company Rakuten, Inc; and the Delaware companies Rakuten USA, Inc ("Rakuten USA"); Rakuten Marketing International, LLC; and Rakuten Brazil Holdings, LLC, which together in the period between 2011 and 2019 summed approximately R$222 million *Id*., ¶ 8.

5.     On August 1st, 2018, a financing agreement was signed between Applicant and Rakuten Brasil Financial Services Ltda, later named Gencomm Financial Services do Brasil Ltda

("Gencomm Financial"), with a total credit line of R$ 20 million. It was guaranteed by credit and debit card receivables. *Id.*, ¶ 18.

6.     On October 28, 2019, the Brazilian Rakuten Group announced the sale of all its shares held in four of the five Brazilian companies to TOG Brazil, an entity registered and existing under the laws of Delaware, United States of America, with a registered office in the City of Dover, County of Kent, State of Delaware, at 850 New Burton Road, Suite 201, Zip Code 19904, that was incorporated on October 14, 2019 – the exact same day that Rakuten's Brazilian operations were transferred to it. *Id.*, ¶ 11.

7.     TOG Brazil is part of the Ten Oaks group (Ten Oaks Management, LLC; Ten Oaks Friar Common Investors, LLC; and Ten Oaks Friar Series B Investors, LLC). The shareholding and managing structure of TOG Brazil is exercised by its declared ultimate beneficial owners, Mr. Michael (Mike) Hahn and Mr. Matt Magan. On October 14, 2019, Rakuten Brazil Holdings Ltda and TOG Brazil, with the express approval of the parent company Rakuten USA, signed the *Quota Purchase Agreement* and provided the sale to TOG Brazil of all the quotas (shares) of Rakuten Brasil Internet Service Ltda, Rakuten Brasil Financial Service Ltda and Rakuten Brasil Logistics Services Ltda, for the symbolic value of only US$1.00. *Id.*, ¶ 13.

8.     By the acquisition of the shares of Rakuten Brazil Holdings Ltda, TOG Brazil took full control of the companies Rakuten Brasil Internet Service Ltda., Rakuten Brasil Financial Services Ltda. and Rakuten Brasil Logistics Services Ltda. and renamed each of the entities, as previously highlighted, and the Brazilian Rakuten Group to "Gencomm group." Only Rakuten Marketing Brazil Ltda, the sole profitable enterprise, remained under the control of the Japanese Rakuten group. Such acquisition was made suddenly and unilaterally, surprising Applicant and all other creditors. *Id.*, ¶ 15.

9.     The last increase of the credit line by the Applicant occurred on August 6, 2019, approximately two months before all the Brazilian Rakuten Group's operations in Brazil was sold to TOG Brazil. In that occasion, the credit limit was raised to R$65 million. This last renewal is represented by a bank's credit certificate, which is considered an enforceable instrument under Brazilian law. However, every renewal operation has always been bonded by the main contract "Monthly Hot Account," which was signed by the parties in 2018. *Id.*, ¶ 19.

10.     On the date of acquisition of the Rakuten Group Brazilian operation by TOG Brazil, October 10, 2019, the outstanding balance of Applicant's line of credit was approximately R$49.1 million and a few days later, on October 31, 2019, the debt was raised to 52.1 million Brazilian Reais. *Id.*, ¶ 20.

11.     In order to maintain the credit line, Ten Oaks group offered a *Comfort Letter* to Applicant, assuring that it would put its best efforts to ensure the payment of the credit. *Id.*, ¶ 21. However, the Applicant made several requests to Ten Oaks group to analyze the possibility of preserving the credit line and did not receive any answer. *Id.*, ¶ 22. Applicant also sent an extrajudicial notification to inform that it would not renew the credit line and, therefore, the constitution in arrears of the Rakuten Brazilian Group due to the lack of payment of the contract n.11478-000730700346242 (Monthly Hot Account – Card Receivables). *Id.*, ¶ 23.

12.     Nowadays, the debt owed to Applicant is currently listed in the Bankruptcy Proceeding for R$87,412,349.924 million. Despite the amount listed by the Judicial Administrator, it is worth mentioning that Itaú is disputing that this amount is high enough in the bankruptcy proceeding, pending a final decision by the bankruptcy judge. Itaú Unibanco S.A. holds the largest credit against the Gencomm Group and, therefore, is an interested party in adopting measures that could help to satisfy its credit, especially the search for information that could reveal third parties liable for the debts. *Id.*, ¶ 24.

**Nature of Evidence Sought and Relief Requested**

13.     Applicant seeks documentary and testimonial evidence from TOG Brazil and the Ten Oaks group. TOG Brazil signed the *Quota Purchase Agreement* to acquire all the quotas (shares) of Rakuten Brasil Internet Service Ltda, Rakuten Brasil Financial Service Ltda and Rakuten Brasil Logistics Services Ltda, for the symbolic value of only $1.00. *Id*., ¶ 13. Only three months after the acquisition of the companies, on February 3, 2020, the Gencomm Group filed a request for joint judicial reorganization of the four Brazilian entities, arguing that the companies were never profitable. *Id*., ¶ 25. Two months after that, again showing no commitment, the companies requested to convert its judicial reorganization to liquidation. *Id*., ¶ 36. However, it appears that the sale of the Brazilian Rakuten Group's operations to TOG Brazil was conducted without any audit process or due diligence, which was highlighted by the Judicial Administrator in its report to the Brazilian bankruptcy court. *Id*., ¶ 26. Therefore, the search for evidence and further information about what really happened concerning the downfall of the Brazilian Rakuten Group is essential to creditors, and Applicant in particular, to determine what legal measures can be filed in the Bankruptcy Proceeding, or whether there exists new measures available to Itaú outside the bankruptcy court. *Id*., ¶ 39.

14.     Accordingly, Applicant seeks assistance from this District Court of Delaware, where TOG Brazil and the Ten Oaks group (Ten Oaks Management, LLC; Ten Oaks Friar Common Investors, LLC; and Ten Oaks Friar Series B Investors, LLC) are incorporated[2], to obtain relevant and probative documentary evidence, as recorded negotiations, communications, transfers and related documents, from them regarding those transactions between TOG Brazil, the Brazilian Rakuten Group, Rakuten, Inc and Rakuten USA, Inc ("Discovery Targets"), especially to obtain

---

[2] Cogency Global Inc., the registered agent of Ten Oaks Management, LLC, Ten Oaks Friar Series B Investors, LLC and Ten Oaks Friar Common Investors, LLC, is located at 850 New Burton Road, Suite 201, Dover, Delaware

information about the background of the *Quota Purchase Agreement* signed by those companies, given the lack of due diligence on the purchase and the apparent negligence on the restructuring of the Brazilian Rakuten Group. *Id.*, ¶ 40. As demonstrated below, Applicant meets the mandatory requirements and discretionary factors for granting this relief under Section 1782.

## **ARGUMENT**

## I.     **STANDARD FOR GRANTING RELIEF**

Section 1782 is "provided for assistance in obtaining documentary and other tangible evidence as well as testimony." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 248 (2004).

Courts have distilled §1782's language into a two-part test consisting of a mandatory component and a discretionary component for granting relief. *First*,

> The statute "imposes three fundamental requirements for a discovery subpoena: (1) the person from whom discovery is sought must reside in the district; (2) the discovery must be for use in proceedings before a foreign tribunal; and (3) the application can be made by either the foreign tribunal or by an interested party."

*Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010), quoting 28 U.S.C. § 1782(a). See also *In re Biomet Orthopaedics Switz. GmBh*, 742 F. App'x 690 (3d Cir. 2018); *In re O'Keeffe*, 646 F. App'x 263 (3d Cir. 2016); *Mees v. Buiter,* 793 F.3d 291 (2d Cir. 2015), citing *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012).

*Second*, "[t]o guide district courts in the decision to grant a Section 1782 petition, the Supreme Court in *Intel* discussed non-exclusive factors (the '*Intel* factors') to be considered in light of the 'twin aims' of section 1782 . . . ." *In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019) (omission in original), citing *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018). Those factors are (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter

arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *In re del Valle Ruiz*, 939 F.3d at 533-34 citing *Intel*, 542 U.S. at 264-65.[3]

## II.    APPLICANT MEETS SECTION 1782'S STATUTORY REQUIREMENTS

### A.    <u>The Respondents Reside or Are Found In This District</u>

#### 1.    <u>Legal Standard</u>

Section 1782 does not define "found." However, "§ 1782(a) supports a flexible reading of the phrase "resides or is found." *In re del Valle Ruiz*, 939 F.3d at 527 citing *In re Edelman v. Taittinger*, 295 F.3d 171, 178-79 (2d Cir. 2002). The Second Circuit has "repeatedly recognized Congress's intent that §1782 be 'interpreted broadly'…" (*In re del Valle Ruiz*, 939 F.3d at 528 citing *Brandi-Dohrn*, 673 F.3d at 80) and held that the "statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d at 527.

#### 2.    <u>TOG Brazil and the Ten Oak Group Reside or are Found in the District of Delaware</u>

Pursuant to § 1782, a corporation, as opposed to an individual "resides or is found" in the district of its incorporation and its principal place of business. See *In re Petrobras Sec. Litig.,* 393 F. Supp. 3d 376, 382 (S.D.N.Y. 2019) citing *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) reasoning that district courts should read the "resides or is found" language in

---

[3] The Court's discretionary analysis should be guided by the twin congressional policy aims of § 1782. *Brandi-Dohrn,* 673 F.3d at 81 ("District courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.") (internal citations and quotations omitted); *Gushlak*, 486 F. App'x at 218 (same); see also *Intel*, 542 U.S. at 252 (rejecting additional requirements to granting relief as they "would disserve § 1782(a)'s twin aims.").

§ 1782 to incorporate a personal jurisdiction requirement. A legal entity, also "resides or is found in" a district, pursuant to § 1782, when it has engaged in systematic and continuous activity in the district. *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007). To satisfy this latter standard, courts have looked *inter alia* to whether the entity is incorporated or headquartered in the district. *In re Fernando Celso De Aquino Chad*, 2019 WL 2502060, at *3 (S.D.N.Y. June 17, 2019), citing *Matter of Fornaciari*, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) (looking to whether entities were headquartered in the district of New York).

In addition, "where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery. *In re del Valle Ruiz*, supra.

Here, TOG Brazil and the Ten Oaks group are incorporated under the laws of Delaware and their registered agent, Cogency Global Inc, maintains its main office in this District, in the City of Dover, County of Kent, State of Delaware, at 850 New Burton Road, Suite 201, Zip Code 19904. Forssell Decl., ¶¶ 11;40.

Therefore, TOG Brazil and the Ten Oaks group reside or are found in this District within the meaning of § 1782. *Id.*, ¶41.

## B.     The Discovery Sought is for use in a Proceeding in a Foreign Tribunal

Section 1782 expressly provides that "the discovery must be for use in proceedings before a foreign tribunal; and [] the application can be made by either the foreign tribunal or by an interested party." *See Kulzer*, 390 F. App'x at 91. *See also In re Merck*, 197 F.R.D. 267, 270 (M.D.N.C. 2000) (citing *Lancaster Factoring Co., Ltd. v. Mangone*, 90 F.3d 38 (2d Cir. 1996) ("A proceeding includes any proceeding in which an adjudicated function is being exercised or is imminent."); *Mees,* 793 F.3d at 299 ("an appplicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success."); *Certain Funds,*

*Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015) ("It is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding").

As explained in Forssell Declaration, it appears that sellers and buyer intended to avert any responsibility from Rakuten's former shareholders (Rakuten, Inc and Rakuten USA, Inc), since all the measures adopted (or the lack thereof) lead to its fast bankruptcy. Forssell Decl., ¶ 37. If it is proven that those measures were taken with the clear intention to harm creditors, applicant intends to add claims in the pending Bankruptcy proceeding to revoke all acts to harm creditors, in a fraudulent collusion to avert the liability of the parent companies of the Brazilian Rakuten Group for the debt, in accordance with article 130 of Brazilian Law N. 11.101/05. *Id.*, ¶ 38.

In *Kulzer v. Esschem, Inc.*, the Third Circuit granted discovery to be used in a German proceeding holding that "[w]e can quickly address whether most of the Intel factors are met here: … German civil procedure does not offer a mechanism for general pretrial discovery comparable to that obtainable in the United States; any request to the German court must be for specific documents, …; and the German court has no jurisdiction over a non-party." 390 F. App'x at 92. The Court concluded that the case "presented a textbook predicate for a successful § 1782 petition." *Id.* Like *Kulzer v. Esschem, Inc*, here the Brazilian Bankruptcy court has no jurisdiction over non-parties to begin general discovery abroad, and the Applicant did not receive accurate information related to the transactions involving the Respondents and the Discovery Targets. *Id.*, ¶¶37; 43. If this Court grants discovery, Applicant will be able to use the evidence sought here to garner an advantage in the ongoing Bankruptcy Proceeding, thereby satisfying the second mandatory requirement of § 1782.

### C.      The Applicant is an Interested Person

Finally, Applicant is an interested person in its capacity as party and the largest creditor in the Bankruptcy proceeding. *Id*., ¶ 24. A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance… qualifies as an interested person within any fair construction of that term." *Intel*, 542 U.S. at 256-57 (internal citations and quotations omitted); A litigant in a foreign proceeding plainly falls within the definition of "interested person." *Lancaster*, 90 F.3d at 42 ("The legislative history to § 1782 makes plain that interested person includes a party to the foreign litigation.") (internal quotations omitted). As such, Applicant meets the third mandatory requirement.

### III.    APPLICANT MEETS THE *INTEL* DISCRETIONARY FACTORS

As noted above, once the District Court has determined that the mandatory requirements for relief under Section 1782 are met, the Court is free to grant discovery in its discretion. *In re del Valle Ruiz*, *supra*. Additionally, that discretion must be guided by the twin policy aims of § 1782: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *Brandi-Dohrn*, 673 F.3d at 81. Here, these discretionary factors weigh in favor of granting the requested relief.

*First*, there is no expectation that any of the Respondents will become a party to the Bankruptcy Proceeding. Forssell Decl., ¶ 42. And as such, this Application constitutes the only practical and timely method for obtaining the needed evidence for use there. *Id*. Indeed, absent the instant Application, the complete evidence would almost certainly remain outside the reach of the Applicant and possible filling related to the ongoing liquidation before the Brazilian bankruptcy court. *Id.*

10

*Second*, counsel in Brazil has advised that there is no indication that the Brazilian bankruptcy court or other Brazilian civil courts would not be receptive to the documentary evidence sought through the instant Application. *Id.*, ¶ 43. Even if the documents were not used as evidence in those proceedings, the District courts have held that Section 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered "for use in a proceeding in a foreign or international tribunal." *Brandi-Dohrn*, 673 F.3d at 77.

*Third*, the evidence sought through the instant application would likely be admissible in the Brazilian courts and does not otherwise circumvent any proof-gathering restrictions in each jurisdiction. *Id.*

*Fourth*, this Application is not unduly intrusive or burdensome. The proposed requests to the Respondents, demonstrated in the sample subpoena attached as **Exhibit A** to the Application, are not unduly intrusive or burdensome because they are of limited scope. *Id.*, ¶ 44. The proposed requests seek limited records relating to the *Quota Purchase Agreement* signed between TOG Brazil, Inc and the Brazilian Rakuten Group, with Rakuten USA, Inc as a consenting part, for the limited period beginning in January 2019 to the present. *Id*.

For the foregoing reasons, each discretionary factor identified by the *Intel* Court weighs in favor of granting the Application.

WHEREFORE, Applicant respectfully requests this Court to enter an Order, in the proposed, or substantially similar, form attached as **Exhibit B**:

(a) exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this Application for Judicial Assistance;

(b) ordering that discovery taken pursuant to this Application and Order will be governed by the Federal Rules of Civil Procedure;

(c) granting Applicant leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve the subpoenas, in substantially the same form as the sample subpoena attached respectively as **Exhibit A** to this Application, and take testimony;

(d) pursuant to § 1782 and to facilitate any testimony given in connection with this Application and Court Order, appointing Applicant as a person with the power to administer any necessary oath and take testimony or statement; and

(e) any other relief this Court deems just and proper.

Dated: October 6, 2021

LABATON SUCHAROW LLP

*Of Counsel*:

*/s/ Ned Weinberger*
Ned Weinberger (Bar No. 5256)
300 Delaware Avenue, Suite 1340
Wilmington, DE  19801
Tel: (302) 573-2540

KELLNER HERLIHY GETTY &
FRIEDMAN LLP
Douglas A. Kellner
470 Park Avenue South – 7th Floor
New York, New York 10016-6819
Tel: (212) 889-2121

*Attorneys for Applicant Itaú Unibanco S/A*

12