# EXHIBIT 5

fls. 14360

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190

Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AE72154.

## QUOTA PURCHASE AGREEMENT

By this private instrument, on one side:

A.     **RAKUTEN BRAZIL HOLDINGS LTDA.**, a limited liability company, with head office in the City of São Paulo, State of São Paulo, at Avenida Francisco Matarazzo, No. 1500, 6th floor, New York Tower, Água Branca, Zip Code 05001-100, enrolled with the CNPJ/ME under No. 13.271.186/0001-65, herein duly represented pursuant to its articles of association by its officer, René Toshiro Abe (hereinafter referred to as "**Seller**");

And, on the other side:

B.     **TOG BRAZIL HOLDINGS, INC.**, a corporation duly organized and existing in accordance with the laws of Delaware, with head office in the City of Dover, County of Kent, State of Delaware, at 850 New Burton Road, Suite 201, Zip Code 19904, herein duly represented pursuant to its organizational documents by its authorizes representative, Mike Hahn (hereinafter referred to as "**Buyer**");

Seller and Buyer shall be jointly designated simply as "**Parties**" and, severally, as "**Party**";

And, further, in their capacity as intervening and consenting parties:

C.     **RAKUTEN USA, INC.**, a corporation duly organized and existing in accordance with the laws of the State of Delaware, United States of America, with registered office in the City of San Mateo, State of California, at 800 Concar Dr, Zip Code 94402, USA, enrolled with the CNPJ/ME under No. 26.169.864/0001-25, herein duly represented pursuant to its organizational documents by its CEO, Amit Patel;

D.     **RAKUTEN BRASIL INTERNET SERVICE LTDA.**, a limited liability company, with head office in the City of São Paulo, State of São Paulo, at Avenida Francisco Matarazzo, No. 1500, 6th floor, New York Tower, Água Branca, Zip Code 05001-100, enrolled with the CNPJ/ME under No. 01.303.446/0001-58, herein duly represented pursuant to its articles of association by its CEO, René Toshiro Abe (hereinafter referred to as "**Target 1**");

E.     **RAKUTEN BRASIL FINANCIAL SERVICES LTDA.**, a limited liability company, with head office in the City of São Paulo, State of São Paulo, at Avenida Francisco Matarazzo, No. 1500, 6th floor, room 7, New York Tower, Água Branca, Zip Code 05001-100, enrolled with the CNPJ/ME under No. 22.366.799/0001-77, herein duly represented pursuant to its articles of association by its officer, René Toshiro Abe (hereinafter referred to as "**Target 2**");

F.     **RAKUTEN BRASIL LOGISTICS SERVICES LTDA.**, a limited liability company, with head office in the City of São Paulo, State of São Paulo, at Avenida Francisco Matarazzo, No. 1500, 6th floor, room 10, New York Tower, Água Branca, Zip Code 05001-100, enrolled with the CNPJ/ME under No. 28.867.180/0001-22, herein duly represented pursuant to its articles of association by its officer, René Toshiro Abe (hereinafter referred to as "**Target 3**"),

Target 1, Target 2 and Target 3 shall be jointly referred to simply as "**Target Companies**";

**WHEREAS:**

1)     On the date hereof, (i) the Seller is the legitimate holder of fifty-seven million, nine hundred and seven thousand, two hundred and twelve (57,907,212) quotas in the Target 1, with a par

1

value of one *Real* (R$ 1.00) each; and (ii) Rakuten Inc., a company duly organized and existing in accordance with the laws of Japan, with head office at 1-14-1 Tamagawa, Setagaya-ku, Tokyo 158-0094, Japan, enrolled with the CNPJ/ME under No. 13.614.786/0001-89 ("**Rakuten Inc.**") is the legitimate holder of two hundred and thirty-three (233) quotas in the Target 1, with a par value of one *Real* (R$ 1.00) each, which are all free and clear of any Encumbrances and represent one hundred percent (100%) of the quotas of Target 1 (the "**Quotas of Target 1**");

2) Also, on the date hereof, (i) the Seller is the legitimate holder of (i) twenty-seven million, five hundred and fifty-eight thousand, two hundred and sixteen (27,558,216) quotas in the Target 2, with a par value of one *Real* (R$ 1.00) each; and (ii) Target 1 is the legitimate holder of (ii) one (1) quota in the Target 2, with a par value of one *Real* (R$ 1.00), which are all free and clear of any Encumbrances and represent one hundred percent (100%) of the quotas of Target 2 (the "**Quotas of Target 2**");

3) In addition, on the date hereof, (i) the Seller is the legitimate holder of (i) nine hundred and ninety-nine (999) quotas in the Target 3, with a par value of one *Real* (R$ 1.00) each; and (ii) Target 1 is the legitimate holder of (ii) one (1) quota in the Target 3, with a par value of one *Real* (R$ 1.00), which are all free and clear of any Encumbrances and represent one hundred percent (100%) of the quotas of Target 3 (the "**Quotas of Target 3**") (Quotas of Target 1, Quotas of Target 2 and Quotas of Target 3 shall be jointly referred to simply as "**Quotas of the Target Companies**"); and

4) The Parties reached an agreement for the sale and purchase of one hundred percent (100%) of the Quotas of the Target Companies by the Seller to the Buyer, according to the terms, conditions and timeframes established in this instrument ("**Transaction**"),

**NOW, THEREFORE,** the Parties have **RESOLVED** by mutual agreement to enter into this Quota Purchase Agreement ("**Agreement**"), which shall be governed by the following clauses and conditions:

## CHAPTER I
## DEFINITIONS AND RULES OF INTERPRETATION

**1.1.**    Definitions. The following terms, when used in this Agreement, shall apply equally in both the singular and plural forms, in the masculine and feminine genders, and shall have the meanings ascribed to them below:

"**Acquisition Price**" has the meaning ascribed to it in Clause 3.1 (*Acquisition Price*);

"**Agreement**" has the meaning ascribed to it in the Recitals above;

"**Brazil**" means the Federative Republic of Brazil;

"**Business Day**" means any calendar day, except for Saturdays, Sundays, holidays and other days when commercial banks are not open for business due to a determination or legal prerogative in the City of São Paulo, State of São Paulo, and the City of Wilmington, State of Delaware;

"**Buyer**" has the meaning ascribed to it in the Preamble;

"**Closing**" has the meaning ascribed to it in Clause 4.3 (*Closing*);

"**Closing Date**" has the meaning ascribed to it in Clause 4.3 (*Closing*);

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AEF2154.

"**Encumbrance**" means any mortgage, pledge, fiduciary transfer or assignment, security interest, commitment, requirement, debt, attachment or any other kind of judicial or administrative constriction, bond, usufruct, deed of trust, third party rights, claim, right of guarantee, burden, charge, chattel mortgage or title retention, lease, sub-lease, licensing, easement, covenant, condition, wrongful possession, voting agreements, right of possession or ownership, option, right of first offer, right of first refusal, right of joint sale, obligation of joint sale, right of negotiation or of acquisition, right of retention, or other constrictions or restrictions of any kind;

"**Governmental Authority**" means any nation or government (whether in the federal, state or municipal spheres, as well as any other existing political sub-divisions thereof); any bodies, departments or authorities that have executive, legislative, judiciary, regulating or administrative functions of governmental nature, including any authorities, agencies, independent government offices, departments, councils, commissions or other government offices in Brazil and, if applicable or relevant, in any other country; any courts, tribunals or arbitrators; any exchange markets or organized over-the-counter markets that are broadly recognized;

"**Intellectual Property Rights**" means all the (i) trademarks, corporate names, domain names, copyrights and other similar rights, including their registrations, registration and renewal applications, (ii) patents, inventions, processes, designs, formulae, including their registrations, registration and renewal applications, industrial secrets, technical know-how, secret information, software, data and documentation, contents of websites on the Internet and all similar Intellectual Property Rights, (iii) tangible representations in any media of any one of the mentioned rights, (iv) information technology, and (v) licenses related to any of the rights mentioned above;

"**Law**" means any law, decree, regulation, regulatory requirement, rule, ordinance, instruction, resolution, writ, judgment, court order, corrective order, order or requirement of any Governmental Authority, including Tax, judicial and monetary authorities, and relevant construal, administration and application, whether or not having the force of a law, or any other Brazilian requirement in the federal, state and municipal spheres;

"**Party(ies)**" has the meaning ascribed to it in the Preamble;

"**Person**" means any individual or legal entity, including, as legal entity, any partnership, association, limited liability company, joint stock company, simple company, trust, non-corporate entity, equity participation investment fund, governmental or regulating agency and its sub-divisions, or any other entity, whether having a legal personality or not;

"**Seller**" has the meaning ascribed to it in the Preamble;

"**Quotas of the Target Companies**" has the meaning ascribed to it in the Recitals above;

"**Target 1**" has the meaning ascribed to it in the Preamble;

"**Target 2**" has the meaning ascribed to it in the Preamble;

"**Target 3**" has the meaning ascribed to it in the Preamble;

"**Target Companies**" has the meaning ascribed to it in the Preamble;

"**Tax**" or "**Taxes**" means all of the taxes, charges, tariffs, compulsory loans, social contributions, contributions for intervention in economic domain, contributions for improvement, contributions of interest of the professional or economic categories, and other contributions or assessments applied or charged by any Governmental Authority, including withholdings at source, payroll deductions, labor and social security contributions, contributions to the Unemployment Compensation Fund – FGTS and to the National Social Security Institute - INSS, and the interest, penalties, monetary restatement and additions that are applicable to the latter;

3

"**Third Party**" means any Person, other than the Parties and the Target Companies;

"**Transaction**" has the meaning ascribed to it in the Recitals above; and

"**Working Capital**" means the sum of current assets, to include cash, cash equivalents, immediately available balances with banks and other financial institutions, and accounts receivable; current liabilities, to include accounts payable; and long term liabilities, to include the balance of the credit lines with Itaú Unibanco S/A and other banks and financial institutions; of the Target Companies.

**1.2.**     Rules of Interpretation

**1.2.1.**   The headings and titles of the Clauses contained herein are merely for referential purpose, and thus are irrelevant for the construal or analysis of the content of this Agreement.

**1.2.2.**   All of the references contained herein concerning Chapters, Clauses, Parties, Recitals, Preamble and Exhibits are considered to be allusions to the chapters, clauses, parties, recitals, preamble and exhibits of this Agreement, unless otherwise determined by the context.

**1.2.3.**   The words "herein" "hereof" and "hereunder" and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof.

**1.2.4.**   The word "will" shall be construed to have the same meaning and effect as the word "shall."

**1.2.5.**   The terms "included", "include", "including" and any analogous terms shall be construed as if they were followed by the phrase "but not limited to".

**1.2.6.**   References to any agreement, document or other instrument shall be construed as referring to such agreement, document or other instrument as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein and therein), unless otherwise provided.

**1.2.7.**   References to provisions of a Law shall be construed as references to such provisions as amended, expanded, restated or re-enacted, or as their application may be amended from time to time by other rules, and shall include any provisions from which they originate (with or without modifications) and any decisions, regulations, instruments or legal rules subordinated to them. For avoidance of doubt, the Parties acknowledge that this Agreement is subject to the Laws in force at the time of its execution.

**1.2.8.**   All the references to Persons include their successors, beneficiaries and permitted assignees.

**1.2.9.**   Any reference to a *pro rata* payment of a given amount to or by the Seller shall mean the payment by or to the Seller, as the case may be, of the sum equal to such amount.

**1.2.10.**  The words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

## CHAPTER II
## SALE, PURCHASE AND TRANSFER OF THE QUOTAS

**2.1.**     Sale and Purchase of the Quotas. Subject to the terms and conditions of this Agreement and on the best terms of the Law, the Seller hereby undertakes, on an irrevocable and irreversible basis, to sell and transfer to the Buyer, on the Closing Date, for the price and payment obligations as defined

4

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190

Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AE72154.



in Chapter III (*Price and Payment Terms*) below, the totality, and not less than the totality, of the Quotas of the Target Companies, as established in the Recitals above. The Buyer, in turn, hereby undertakes to acquire, subject to the terms and conditions of this Agreement and on the best terms of the Law, from the Seller, on an irrevocable and irreversible basis, for the price and payment obligations as defined in Chapter III (*Price and Payment Terms*) below, the totality, and not less than the totality, of the Quotas of the Target Companies.

**2.2.**     Encumbrances. The Quotas of the Target Companies shall be transferred, by the Seller to the Buyer, on the Closing Date, fully paid in and entirely free and clear of any Encumbrances of any nature.

## CHAPTER III
## PRICE AND PAYMENT TERMS

**3.1.**     Acquisition Price. Subject to the terms and conditions set forth in this Agreement, in consideration for the effective transfer of the Quotas of the Target Companies by the Seller to the Buyer, the Buyer shall pay to the Seller a total price of one Dollar (USD 1.00) (the "**Acquisition Price**") to be paid on the Closing Date.

**3.2.**     Effecting of the Payment. The payment of the Acquisition Price shall be made by Buyer to Seller, on the Closing Date, by means of wire transfer of immediately available funds, to the bank account held by Seller to be informed in due course.

**3.3.**     Taxes. Each Party shall bear any and all Taxes incumbent on it by virtue of law and as a result of the Transaction.

**3.4.**     Discharge by the Seller. After full payment of the Acquisition Price, the Seller shall be deemed to have granted to the Buyer full, irreducible, irrevocable and irreversible discharge for the payment of the Acquisition Price.

## CHAPTER IV
## CLOSING

**4.1.** Conditions Precedent: The respective undertakings of the Seller and the Buyer to sell and purchase the Quotas of the Target Companies under this Agreement shall be subject to the following conditions precedent: (i) a statement describing the Working Capital of the Target Companies on October 7, 2019 shall have been duly prepared by the Seller and submitted to the Buyer; (ii) the Working Capital of the Target Companies on the Closing Date shall not be lower than 93% of their Working Capital on October 7, 2019 as informed by the Seller to the Buyer; and (iii) the Transaction shall have been approved internally by Rakuten.

**4.1.1.**     In case the Working Capital on the Closing Date is lower than 93% of the Working Capital on October 7, 2019, the Seller may true up the difference so that the condition precedent described in item (ii) of Clause 4.1 above shall be deemed fulfilled.

**4.2.** If on October 31, 2019 (or on any other later date as may be agreed by the Parties) the Closing has not yet occurred, either Party may terminate this Agreement by means of a written notice to the other Parties with immediate effects and, absent any bad faith or breach of this Agreement by either Party, neither the Seller nor the Buyer shall have any further claim against, or liability (including for expenses and damages) to the other Party in respect of this Agreement other than with regard to the confidentiality obligations undertaken pursuant to this Agreement, which obligations shall survive termination thereof.

5

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AE72154.

**4.3.** <u>Closing</u> The closing of the Transaction ("**Closing**") shall occur one (1) Business Day after all conditions precedent described on Clause 4.1 have been met, fulfilled or waived ("**Closing Date**"), when the following actions shall be taken by the Parties:

(i)     immediately prior to the transfer of the Quotas of the Target Companies to the Buyer (a) Rakuten Inc. shall assign and transfer to the Seller the two hundred and thirty-three (233) quotas it holds in Target 1; (b) Target 1 shall assign and transfer to the Seller the sole quota it holds in Target 2; and (c) Target 1 shall assign and transfer to the Seller the sole quota it holds in Target 3; and thereafter the Seller shall assign and transfer the totality of the Quotas of the Target Companies to the Buyer, and the Buyer shall receive them, all by signing the relevant Instrument of Amendment to the Articles of Association of each of the Target Companies substantially in the form of <u>Exhibit 4.3(i)</u> hereto, approving the assignment of the Quotas of the Target Companies, as well as the resignation of the relevant individual(s) from their offices in the management of each of the Target Companies, with concurrent appointment by the Buyer of new members of management to be vested in office in each of the Target Companies, among other resolutions;

(ii)    the Buyer shall pay the Acquisition Price, as provided in Clause 3.1 (*Acquisition Price*) above;

(iii)   the relevant Parties shall enter into a Transitional Services Agreement ("**TSA**"), in the form of <u>Exhibit 4.3(iii)</u>;

(iv)    the Target Companies shall deliver to the Seller powers of attorney substantially in the form of <u>Exhibit 4.3(iv)</u> hereto, pursuant to which the individuals designated by the Seller will be invested with all the necessary powers to represent the Target Companies before any Governmental Authority in connection with the filing and registration of the amendments to the articles of association of the Target Companies and effectiveness of the sale, assignment, transfer, conveyance and delivery of the Quotas of the Target Companies to the Buyer; and

(v)     the Seller shall deliver to the Buyer powers of attorney granted by the Target Companies substantially in the form of <u>Exhibit 4.3(v)</u> hereto, pursuant to which the individuals designated by Buyer will be invested with all the necessary powers to represent the Target Companies before third parties in its ordinary course of business for a transition period.

**4.4.**    Place of Closing. The Closing shall take place in the offices of CGM Advogados, at Avenida Brigadeiro Faria Lima, No. 1,663, 5th floor, Zip Code 01452-001, in the City of São Paulo, State of São Paulo or at such other location as the Parties may mutually agree.

**4.5.**    Additional Measures. Each of the Parties undertakes to sign any and all documents and/or instruments reasonably requested or required, as well as endeavor its commercially reasonable efforts to take, or cause to be taken, all measures required, appropriate or advisable under the applicable Laws or otherwise, in order to accomplish the Transaction as soon as possible, and to mutually cooperate for this purpose.

## CHAPTER V
## ASSETS AND LIABILITIES

**5.1.**    The Buyer shall purchase each of the Target Companies "as is", i.e. with all assets and liabilities held by the Target Companies on the Closing Date, whether contingent, materialized or not, without any obligation of indemnification by Seller to the Buyer, including, but not limited to, future claims against the business for any period prior to Closing. Upon Closing, the Buyer shall take immediate control of the operations of the Target Companies. In this context, Buyer and/or the

Target Companies shall be responsible for any third-party claims in connection with the Target Companies and shall hold Seller and its affiliates harmless from any losses and damages arising therefrom.

**5.2.**   The Parties make the statements in Exhibit 5.2 for informational purposes only, and acknowledge and agree that any inaccuracy or incompleteness of any such statements by either Party, or any losses or damages arising therefrom, shall not entitle the other Party to any right to indemnification under Clause 7.1 or otherwise.

## CHAPTER VI
## OTHER OBLIGATIONS

**6.1.**   Confidentiality. The Parties hereby undertake to treat as strictly confidential and to refrain from disclosing or making public any aspect relating to this Agreement and to the Transaction provided herein and related to them, without prior consent of the other Party, except as required by applicable Law or by any pertinent Governmental Authority, in which case the Party that has the obligation of disclosure shall send a written notice to the other Parties in this regard. Each Party agrees to treat as strictly confidential and to not disclose to any third parties any and all information related to the other Parties that it may gain knowledge of by means of the transactions contemplated in this Agreement, except for any information that (i) has been or may be published, has entered or may enter the public domain without violation of the obligation of confidentiality referred to in this Clause 6.1 (*Confidentiality*); (ii) was already known to the Party receiving the information at the time when such disclosure was made by the other Party; (iii) had its disclosure required by applicable Law or by any pertinent Governmental Authority, in which case the Party that has the obligation of disclosure shall send a written notice to the other Party in this regard; and (iv) if legally received by any one of the Parties from third parties that are in no way subject to any obligation of confidentiality with the other Party. For the avoidance of doubt, the Seller may disclose information to its affiliates on a need to know basis and in furtherance of this Agreement. Each Party shall ensure that their executives, employees, consultants, agents, affiliates and representatives comply with the obligations of confidentiality provided in this Clause 6.1 (*Confidentiality*). Notwithstanding the foregoing, nothing herein shall prevent the Buyer from disclosing any information related to the Target Companies to any third parties after Closing.

**6.2.**   No Announcement. Except as may otherwise be agreed in writing by the Seller or required by any Law or applicable stock exchange regulatory authority, neither the Buyer, its representatives nor relevant consultants shall, at any time, disclose or make any public announcement which discloses the existence, terms (including but not limited to the Acquisition Price or other financial terms), of this Agreement or the transactions contemplated herein, except to advisors who have a need to know.

**6.3.**   Expenses. All costs and expenses incurred by the Parties with the negotiation, preparation and execution of this Agreement shall be borne by the Party that has incurred them, and it is hereby agreed and established that no cost or expense incurred by the Parties with the negotiation, preparation and execution of this Agreement shall be assumed by the Target Companies.

**6.4.**   Intellectual Property.

**6.4.1.**   **(A)** At the Closing, the Parties shall cause the Target Companies to change their name to another name that excludes all Seller trademarks and are not confusingly similar thereto, including making all filings with appropriate Governmental Authorities as necessary to effect this change. **(B)** Up to the first business day immediately following the Closing Date, the Buyer shall cause the Target Companies to: **(i)** remove from all Target Companies' websites any and all branding that includes, displays, reproduces or in any way resembles the names, symbols, trademarks, service marks and/or logos set forth in Exhibit 6.4.1, whether registered or not, or any copyrights associated with the symbols and logos embedded therein

7

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AEF2154.

fls. 14367

("**Seller IP**"); **(ii)** redirect the URLs of all Target Companies' websites to URL(s) belonging to the Buyer; **(iii)** remove all office signage that includes, displays, reproduces or in any way resembles any Seller IP; and **(iv)** stop all active advertising that includes, displays, reproduces or in any way resembles any Seller IP. **(C)** As soon as possible but no later than sixty (60) days following the Closing Date, the Buyer shall cause the Target Companies to change all of their branding in order to no longer include, display, reproduce or in any way resemble any Seller IP. During such period, the Seller hereby authorizes the Target Companies to utilize the Seller IP solely in the same manner and to the same extent as such Seller IP were used by the Target Companies immediately prior to the Closing Date on the Target Companies' business while they are in the process of being re-branded, but in each case solely in connection with services that are identical to those marketed by the Target Companies' business prior to the Closing Date. Such authorization shall terminate on the earlier of sixty (60) days after the Closing Date or such date as the Target Companies have ceased using the Seller IP. For the sake of clarity, the provision above does not comprise the layout of the websites of the Target Companies, nor the following names, symbols, and/or logos, provided they are not used together with any Seller IP: Genesis, One, Nexus, R Log, and R Pay, or any copyrights associated with them, which are within the scope of the Transaction.

6.4.2.   Except as per Clause 6.4.1 above, to the extent the Target Companies own any right (including any common law rights), title or interest in or to any Seller trademarks or domain names, the Buyer hereby agrees that Seller will cause the Target Companies to assign all such right, title and interest, together with the goodwill associated with or symbolized by the Seller trademarks or domain names. The Buyer agrees, at the request and reasonable expense of Seller, to take or cause the Target Companies to take all such other actions, including the execution of any and all other instruments in writing, which may be reasonably required or necessary to more effectively vest in, and record in the name of, title and interest in and to the Seller trademarks or domain names.

6.4.3.   In addition, Buyer shall have a reasonable period of time following the Closing, but not more than sixty (60) days, to destroy, or cause the Target Companies to use or destroy, all consumable products (such as note paper and pens) bearing any Seller IP.

6.4.4.   By the end of the 60-day period mentioned above, Buyer shall cause the Target Companies to cease any use of any Seller IP, including any sale, distribution or use of any products or materials bearing them.

6.5.   Other Post-Closing Obligations. The Seller shall present the filing request of the Instruments of Amendment to the Articles of Association of the Target Companies mentioned in Clause 4.3 above with the Commercial Registry of the State of São Paulo as soon as possible, but no later than thirty (30) calendar days as of the Closing. Buyer shall be responsible for submitting the applicable forms to and/or notify other competent public authorities (including, but not limited to, the Federal, State and Municipal Revenue Services, the Brazilian Central Bank, among others) and financial institutions which have a banking relationship with the Target Companies no later than ten (10) calendar days after the registration of the Instruments of Amendment to the Articles of Association of the Target Companies. All costs in connection with the actions taken under this clause shall be borne by the Target Companies.

## CHAPTER VII
## INDEMNIFICATION

7.1.   Buyer hereby irrevocably undertakes to indemnify the Seller and its affiliates for, and hold them harmless from, any losses and damages arising from a breach of any obligation under this

8

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190 Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AE72154.

Agreement, provided that such breach or violation is not cured within thirty (30) days from the date of receipt of a notice sent by the Seller in this regard.

**7.2.**    Seller hereby irrevocably undertakes to indemnify for and hold the Buyer and its affiliates harmless from any losses and damages arising from Seller's failure to sell and transfer to the Buyer the Quotas of the Target Companies, as established herein, provided that such failure is not cured within thirty (30) days from the date of receipt of a notice sent by the Buyer in this regard.

## CHAPTER VIII
## GENERAL PROVISIONS

**8.1.**    Notifications. All notifications and communications provided in connection with this Agreement shall be given in writing by e-mail, registered mail, courier or delivered personally, in each case with confirmation of receipt, and considered received on the date of effective delivery at the address of the Party notified, as described below, or to another address as otherwise informed (if there should be any change in the addresses informed below) by one Party to the other Parties, as the case may be:

If to the Seller:

Reginald Rasch
800 Concar Dr
San Mateo – CA
Zip Code 94402
USA
E-mail: reginald.rasch@rakuten.com

*with copy to (for information purposes only)*:

CGM Advogados
Attention: Mr. Adriano Chaves
Av. Brig. Faria Lima, No. 1,663, 5th floor
Zip Code 01452-001
São Paulo – SP
E-mail: adriano.chaves@cgmlaw.com.br

If to the Buyer:

Mike Hahn
850 New Burton Road, Suite 201
Dover – DE
Zip Code 19904
USA
E-mail: mike@tenoaksgroup.com

*with copy to (for information purposes only)*:

Boccuzzi Advogados Associados
Attention: Mr. Marco Ferreira Orlandi
Av. Brig. Faria Lima, No. 2,055, 10th floor
Zip Code 01452-001
São Paulo – SP
E-mail: marco@boccuzzi.com.br

9

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AE72154.

**8.2.**   Irrevocability and Irreversibility; Successors. The obligations contained in this Agreement are assumed by the Parties on an irrevocable and irreversible basis and are binding on the Parties as well as on their successors and permitted assignees on any account.

**8.3.**   Independence of the Clauses. In the event that any Chapter, Clause, Exhibit, term or provision of this Agreement is declared null, unenforceable or ineffective, such declaration shall not jeopardize the validity, enforceability and effectiveness of the other clauses, which shall be performed in full and remain fully enforceable and effective, and the Parties shall exert their best efforts so as to adjust validly and in good faith in a mutually acceptable way, in order to obtain the same effects as the covenant that has been declared null, unenforceable or ineffective, as originally stipulated, to the greatest extent possible.

**8.4.**   Entire Agreement. This Agreement represents the totality of the understandings and covenants of the Parties in relation to the matters regulated herein, substituting and revoking any other prior understandings concerning the provisions contained in this Agreement.

**8.5.**   Alterations. This Agreement may only be altered or amended by means of a written instrument executed by all of the Parties.

**8.6.**   Novation. The failure or delay by any one of the Parties in exercising any of its rights under this Agreement, either wholly or in part, shall be considered mere gratuitousness and shall not be considered waiver or novation, and shall not affect the subsequent exercise of such right. Any waiver shall only have effect if it is expressly granted in writing.

**8.7.**   Assignment. Other than by any Party to an affiliate, the assignment by any Party of any of its rights and/or obligations hereunder is not allowed without prior, express and written consent of each one of the other Parties.

**8.8.**   Timeframes. All of the timeframes provided in this Agreement shall be counted by excluding the date of commencement and including the date of maturity. All of the timeframes established in this Agreement and that end on a day other than a Business Day, shall be automatically postponed to the first subsequent Business Day.

**8.9.**   Specific Performance. This Agreement that is signed by two (2) witnesses represents an extrajudicial instrument of execution for all legal purposes. The Parties hereby agree that all of the obligations assumed in this Agreement are subject to specific performance.

**8.10.**   Intervening and Consenting Party. The Target Companies attend this act and execute this Agreement to be informed of and express their agreement with the provisions contained herein, undertaking to comply with them to the extent pertinent and to refrain from practicing any act that could be contrary to or violate the rights and the obligations established herein.

**8.11.**   Applicable Law. This Agreement shall be governed and construed in accordance with the Laws of the Federative Republic of Brazil.

## CHAPTER IX
## RESOLUTION OF CONFLICTS

**9.1.**   Amicable Discussion. The Parties shall exert all of their efforts to settle amicably avoiding any divergence between them that could arise in relation to this Agreement.

**9.1.1.**   However, if any divergence is ascertained, any one of the Parties shall invite the other party to, within fifteen (15) days, convene in a meeting for presentation of the problem.

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justica do Estado de Sao Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AE72154.

**9.1.2.**   The Parties shall have thirty (30) days as of the first meeting mentioned in Clause 9.1.1 above to resolve the controversy amicably.

**9.2.**   Arbitration. If the Parties fail to settle the dispute, the issue, controversy, doubt or pending matter, including as regards interpretation and performance of this Agreement, or which are related hereto, as well as the transactions provided herein, or the breach of any one of the items above, shall be resolved through arbitration under the relevant provisions of Federal Law No. 9,307, of September 23, 1996 and the Rules of Arbitration of Brazil-Canada Chamber of Commerce ("**CCBC**"), by one (1) arbitrator appointed in accordance with said Rules, which decision shall be based on the Laws of Brazil. As soon as the arbitration tribunal has been established, any and all injunctions that the Parties of the arbitration proceeding may request during the arbitration proceeding shall necessarily and exclusively be presented to the arbitration tribunal, to which the Parties hereby delegate full and unlimited jurisdiction and authority (i) to grant, maintain and revoke the injunctions, and (ii) to revise and grant decisions of early relief, including any request for specific performance. The arbitration proceedings shall be conducted in English. The seat of arbitration and place of hearings shall be the City of São Paulo, Brazil. The arbitration award shall be final and binding. The arbitration tribunal may request coercive assistance of the courts, if necessary for the enforcement of its decisions. Without restriction for the validity of this arbitration clause, the Parties may resort to courts – if and whenever necessary – with the exclusive purpose of: (i) assuring the coercive or sanctioning measures; provisional or permanent, in order to ensure that the arbitration proceeding is initiated or is in progress between the Parties and/or to assure the existence and effectiveness of the arbitration proceeding; (ii) granting injunctions while the arbitration tribunal is not established; and (iii) enforcing the relevant arbitration award.

In witness whereof, the Parties execute this Quota Purchase Agreement in two (2) counterparts of equal content and form, together with the two (2) undersigned witnesses.

São Paulo, October 14, 2019

[rest of the page intentionally left blank]

11

[signature page 1/4 of the Quota Purchase Agreement executed on October 14, 2019 among RAKUTEN BRAZIL HOLDINGS LTDA., as Seller; TOG BRAZIL HOLDINGS, INC., as Buyer; and RAKUTEN USA, INC.; RAKUTEN BRASIL INTERNET SERVICE LTDA.; RAKUTEN BRASIL FINANCIAL SERVICES LTDA. and RAKUTEN BRASIL LOGISTICS SERVICES LTDA., as intervening and consenting parties]

Seller:

_____
**RAKUTEN BRAZIL HOLDINGS LTDA.**
By: René Toshiro Abe


Intervening Consenting Parties:

_____
**RAKUTEN BRASIL INTERNET SERVICE LTDA.**
By: René Toshiro Abe

_____
**RAKUTEN BRASIL LOGISTICS SERVICES LTDA.**
By: René Toshiro Abe

_____
**RAKUTEN BRASIL FINANCIAL SERVICES LTDA.**
By: René Toshiro Abe

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190 Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AE72154.

fls. 14371

fls. 14372

[signature page 2/4 of the Quota Purchase Agreement executed on October 14, 2019 among RAKUTEN BRAZIL HOLDINGS LTDA., as Seller; TOG BRAZIL HOLDINGS, INC., as Buyer; and RAKUTEN USA, INC.; RAKUTEN BRASIL INTERNET SERVICE LTDA.; RAKUTEN BRASIL FINANCIAL SERVICES LTDA. and RAKUTEN BRASIL LOGISTICS SERVICES LTDA., as intervening and consenting parties]

Buyer:

**TOG BRAZIL HOLDINGS, INC.**
By: Mike Hahn

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AE72154.

[signature page 3/4 of the Quota Purchase Agreement executed on October 14, 2019 among RAKUTEN BRAZIL HOLDINGS LTDA., as Seller; TOG BRAZIL HOLDINGS, INC., as Buyer; and RAKUTEN USA, INC.; RAKUTEN BRASIL INTERNET SERVICE LTDA.; RAKUTEN BRASIL FINANCIAL SERVICES LTDA. and RAKUTEN BRASIL LOGISTICS SERVICES LTDA., as intervening and consenting parties]

Intervening Consenting Parties:

DocuSigned by:

*Amit Patel*

A353949AA508440...

**RAKUTEN USA, INC.**
By: Amit Patel

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12 , sob o número WJMJ21407592190 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AE72154.

[signature page 4/4 of the Quota Purchase Agreement executed on October 14, 2019 among RAKUTEN BRAZIL HOLDINGS LTDA., as Seller; TOG BRAZIL HOLDINGS, INC., as Buyer; and RAKUTEN USA, INC.; RAKUTEN BRASIL INTERNET SERVICE LTDA.; RAKUTEN BRASIL FINANCIAL SERVICES LTDA. and RAKUTEN BRASIL LOGISTICS SERVICES LTDA., as intervening and consenting parties]

Witnesses:

1) _____
Name: Angela Trajano
ID No.: RG: 27256174-5
CPF/ME No.: CPF: 269.203.

2) _____
Name: Laura Souza de Oliveira
ID No.: RG: 53.849.110-3 - SSP-SP
CPF/ME No.: CPF: 017.202.

Este documento é cópia do original, assinado digitalmente por LEONARDO CAMPOS NUNES e Tribunal de Justiça do Estado de São Paulo, protocolado em 12/05/2021 às 17:12, sob o número WJMJ21407592190 Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1009063-28.2020.8.26.0100 e código AE72154.