# EXHIBIT 7



**Translation No. I-54738**
**Book No. 657**
**Page 413**

---

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a copy of a document was submitted to me, written in Portuguese, the translation of which is as follows:*

(Barcode: "143051556#137)

Logo of Itaú Unibanco S.A.

**Bank Credit Certificate**

**Credit Extension in Checking Account**

**(Monthly Hot Account – Card Receivables)**

Stamp: "Bank Copy"

Stamp of the 6th Registry of Deeds and Documents and Civil Registry of Legal Entities – Microfilm

Handwritten text: "ID: 2162511"

**Issuer corporate name**

RAKUTEN BRASIL FINANCIAL SERVI

identified in the Proposal of Opening of Checking Account set forth in sub-item 1.9, hereinafter referred to as **Client**.

## 1. Data of this Bank Credit Certificate

| 1.1.   Issue Date | 1.2. Contractual Account | | | | 1.3.   Credit Facility | 1.4. Maturity of this Certificate | 1.5.   Credit Facility Maturity |
|---|---|---|---|---|---|---|---|
| 08/01/2018 | Branch 7307 | Account No. 3▉ | DAC 2 | Category 478-8 | R$20,000,000.00 | **AT SIGHT** | 08/30/2018 |

| 1.6.   Credit   Facility Extension Commission | 1.7. Interest Rate valid for this date | | | |
|---|---|---|---|---|
| 0.00% of the credit facility | 1.7.1. Per month (30 days) 0.20% | 1.7.2.  Per  annum (360 days) 2.53% | 1.7.3. Reference Rate 100.00% DI-Over (Extra-group) | 1.7.4. Capitalization Periodicity MONTHLY |

| 1.8.  Charge  Payment Day | 1.9. Checking Account | | | 1.10. Escrow Account | | | 1.11.   Guarantee Code   (for   Itaú internal use) |
|---|---|---|---|---|---|---|---|
| 30th | Branch 7307 | Account No. 0▉ | DAC 7 | Branch 7307 | Account No. 1▉ | DAC 8 | 418 |

| 1.12. Issue Place | 1.13. Payment Place |
|---|---|
| SÃO PAULO, SP | SAO PAULO, SP |

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.▉▉▉ RG 8.222 837-1
Rua Matias Aires, 402 - 5º andar, cj. 51 - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.



Translation No. I-54738
Book No. 657
Page 414

On the date of presentation, which may be made within 20 years, the **Client** shall pay for this Bank Credit Certificate ("Certificate") to **Itaú Unibanco S.A.**, with its principal place of business at Praça Alfredo Egydio de Souza Aranha, 100 - Olavo Setúbal Tower, São Paulo, SP, enrolled with the National Corporate Taxpayers Register (CNPJ) under No. 60.701.190/0001-04, hereinafter referred to as **Itaú,** the legal, clear and enforceable debt at sight corresponding to the total used amount of the credit facility extended as set forth in sub-item 1.3 ("Credit Facility"), plus any charges set forth in this Certificate.

On the date indicated in sub-item 1.8 and on the maturity of the credit facility set forth in sub-item 1.5, the **Client** shall pay to **Itaú** the charges and used amounts of the credit facility as provided for in this Certificate.

**2. Purpose** - **Itaú** shall extend the revolving facility to the **Client** which is made available in the Checking Account indicated in sub-item 1.9 ("Checking Account"), as long as the guarantee(s) set forth in the item "Guarantees" of this Certificate is/are established.

**3. Use of the Facility** – The credit facility shall be used by the **Client** in a single time or in installments, upon requests of transfers of amounts from the Contractual Account indicated in sub-item 1.2 ("Contractual Account") to the Checking Account, which shall be fulfilled by **Itaú** as follows:

3.1. The **Client** shall request the transfers at the branches or by means of the convenience services of **Itaú,** if contracted by the **Client.**

3.2. The existence of outstanding balance in the Checking Account shall be characterized as a request of use of the credit facility in the amount of said balance, which **Itaú** shall fulfill, with due regard for the credit facility amount available, by transferring the corresponding amount from the Contractual Account to the Checking Account.

3.3. Such transfer made by **Itaú** shall be characterized as use of the credit facility by the **Client,** and the outstanding balance of the Contractual Account shall correspond, at each time, to the total amounts used.

3.4. The credit facility amount may be increased at any time, at the discretion of **Itaú,** which is hereby authorized by the **Client** and by the **Joint Debtors.**

3.4.1. The **Client** undertakes to notify said increase in the credit facility to the **Joint Debtors.**

**3.4.2. In the event that the Client or the Joint Debtors do not agree with any such increase in credit facility, they shall notify Itaú of their disagreement within 5 days as from the date of increase in the credit facility, in order to have the previous credit facility amount restored. The use of the credit facility after such term shall be deemed as the consent of the Client and the Joint Debtors with the new amount of credit facility.**

**3.5. The use of the credit facility shall be conditioned at all times to the establishment and maintenance of the guarantees as set forth in the item "Guarantees" of this Certificate, and Itaú shall solely fulfill those requests of use of the credit facility that are covered by the contracted guarantees.**

**3.6. The statements of the Checking, Contractual and Blocked Accounts and the calculation spreadsheets are integral parts of this Certificate and the amounts set forth therein, ascertained in accordance with this Certificate, are legal, clear and defined amounts. In the event that the Client does not agree with any amounts of any statement or spreadsheet, the Client shall notify Itaú in writing, and in case of the Client's failure to do so within 5 days as from expiration of the term of effectiveness of this Certificate, said documents shall be documental evidence of the use, legality and liquidity of the credit.**

3.7. At the discretion of **Itaú,** the credit facility may be reduced at any time during the maturity term set forth in sub-item 1.5., in the following events:

(i) if the **Client** is included in any record of the credit protection bodies;

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0    RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br



Translation No. I-54738
Book No. 657
Page 415

*Sandra Regina Mattos Rudzit*

TRADUTORA PÚBLICA

(ii) if the **Client** delays the payment of any obligations to any other financial institutions or their suppliers;

(iii) any increase in the **Client's** indebtedness in an amount incompatible with the **Client's** sales revenue;

(iv) if any legal proceeding is filed against the **Client** that may result in impossibility of compliance with the **Client's** obligations or of maintenance of the **Client's** operation or activity.

3.8. **Itaú** shall provide the **Client** with a calculation spreadsheet on a monthly basis, demonstrating, for each concerned period:

a) the credit facility;

b) the daily outstanding balance;

c) the period of calculation of the charges;

d) the debt date of the charges;

e) the total amount of the charges collected in the period, corresponding to the sum of the charges calculated on a daily basis in accordance with the rate in effect on such date;

f) the credit facility opening commission and the maturity date of the credit facility;

g) the IOF (Tax on Financial Transactions) tax rate and the total amount of said tax, calculated pursuant to the law;

h) the contracting and collection tariffs.

3.9. **Itaú** shall provide the **Client** with the following information at **Itaú Empresas na Internet** *(internet banking)* for each day of the period:

a) the daily use of the contractual credit facility;

b) the interest rate for 30 days;

c) the DI-Over (Extra-Group) reference rate;

d) the percentage on the reference rate;

e) the interest rate in effect on each day;

f) the effective monthly interest rate;

g) the effective annual interest rate; and

h) the amount of the daily charges calculated.

**4. Charges the Payment** – The **Client** shall pay to **Itaú** the charges indicated in this item and, on the maturity date of the credit facility, the total amounts used.

4.1. On a monthly basis, on the day indicated in sub-item 8, and on the maturity date of the credit facility, the capitalized interest accrued in the period, calculated on a daily basis on the used amount of the credit facility, by applying the rate obtained by the following formula:

$$\text{Rate} = \left[\frac{i_{am}}{100 \times D.U.}\right] + \left[\left(\frac{CDI_{am}}{3000}\right) \times \left(\frac{P}{100}\right)\right]$$

where:

$i_{am}$ = interest rate for 30 days (sub-item 1.7.1)

$CDI_{am}$ = DI-Over (Extra-Group)

$P$ = percentage of DI-Over (Extra-Group) indicated in sub-item 1.7.3

D.U. = quantity of business days in the month.

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0██ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.



**Translation No. I-54738**
**Book No. 657**
**Page 416**

4.2. Where: (a) "Period of Calculation of the Charges": the period during which the charges are calculated, whereby the first one begins on the date of use of the Credit, as long as the credit facility is active; (b) "DI - Interbank Deposit": time investment of amounts made by a financial institution with another one, whether pre- or post-fixed; (c) "DI-Over-Cetip": the average rate of the pre-fixed DI agreement between financial institutions that do not form part of the same corporate group, for one day, ascertained by CETIP (Notes Financial Custody and Settlement House) and published by the press.

4.3. On the date hereof and on the dates of renewal of the credit facility, the **Client** shall pay the credit facility opening commission at the rate set forth in sub-item 1.6, calculated on the credit facility amount indicated in sub-item 1.3. In case of acceleration of this Certificate, **Itaú** shall refund the commission to the **Client,** in proportion to the period elapsed from the date of acceleration to the agreed maturity date.

**4.4. Itaú may pass on to the Client the amount of any taxes and charges that may be created or increased and which may be payable in connection with this Certificate, upon prior information to the Client.**

4.5. The **Client** shall pay the tax on financial transactions (IOF) pursuant to the applicable law.

4.6. The **Client** acknowledges that the reference rate indicated in sub-item 1.7.3 is legal, publicly disclosed and regularly and impartially calculated. In the event of discontinuation, limitation, non-disclosure, legal or judicial prohibition of use of the DI-OVER (Extragroup) Rate, the SELIC (Custody and Settlement Integrated System) Rate, set by the Monetary Policy Council – COPOM and disclosed by the Central Bank of Brazil – BACEN, shall be used instead.

**5. Payment Method** – The **Client** shall pay to **Itaú**:

a) interest and other charges by means of debit made by **Itaú** from the Checking Account; and;

b) on the maturity date of the credit facility, the amounts used, by means of transfer to be made by **Itaú** from the Checking Account to the Contractual Account.

5.1. The **Client** hereby authorizes **Itaú** to make the debits above in the Checking Account, which shall have sufficient balance available. Insufficient balance available in the Checking Account shall be characterized as delayed payment and authorizes **Itaú,** at its discretion, to make the transfer or debit by generating advances to depositor, as provided for in the Checking Account Opening Agreement.

**6. Joint Debtors** – The persons identified below, hereinafter referred to as **Joint Debtors,** declare to be jointly liable for the obligations of the **Client** in this Certificate.

**7. Guarantees** – In order to guarantee the payment of any amount associated with this Certificate, the following guarantees are created:

7.1. Fiduciary assignment of your current and future credits with the **Acquirers**, resulting from transactions involving the purchase of products and services offered in your points of sale and paid with the use of the credit or debit cards of the Brands indicated in the Instrument of Authorization for Maintenance of Banking Domicile, attached to this Certificate ("**Receivables**").

7.1.1. The following definitions apply: (a) "**Brands**": brands processed by the **Acquirers** as informed in the Instrument of Authorization for Maintenance of Banking Domicile; and (b) "**Acquirers**": any legal entity that accredits persons for the acceptance of credit and/or debit cards of the brands as means of payment in the acquisition of assets and/or services and which provides technological solution and/or means of connection to the systems of the accredited persons for the capture and settlement of transactions carried out with said cards.

• 7.1.2. The **Client** agrees to immediately request to the bank that holds the banking domicile of the **Receivables**, in the event of change in said domicile, the due release before the entity responsible for registration of the banking domiciles for payment of the **Receivables** of the maintenance of banking domicile created in favor of that bank, which release shall be completed within 30 days as from the date of this Certificate.

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0▮▮ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br



Translation No. I-54738
Book No. 657
Page 417

- 7.1.3. The **Client** shall keep the banking domicile unchanged until the settlement of all obligations under this Certificate and may not request its change to any of the **Acquirers** or to the entity in charge of the registration of the banking domiciles for payment of the **Receivables** without the express consent of **Itaú**.

7.1.4. **Itaú**'s consent to the change in the banking domicile shall produce effects within 5 business days as from the date of acceptance by **Itaú**.

7.1.5. In case any of the **Acquirers** advances the payment of the **Receivables,** such advance shall be made exclusively by means of credit to the Escrow Account.

7.1.6. **During effectiveness of this Certificate, the Client may neither offer the Receivables as guarantee of other credit transactions, except for transactions entered into with Itaú, nor refuse, limit or restrict the use of the cards mentioned in sub-item 7.1 for payment for the products and services it supplies.**

7.1.7. Until full settlement of the outstanding balance resulting from this Certificate, the amount of the **Receivables** still unpaid (schedules), as informed by the **Acquirers**, added to the balance of the Escrow Account, shall total an amount equal to the Minimum Amount of Guarantee, which shall correspond to the amount equivalent to the total outstanding balance under this Certificate.

7.1.7.1. **Itaú** shall only release to the **Client** the amounts credited to the Escrow Account, crediting them to the Checking Account, if: (i) the **Client** is compliant with all obligations under this Certificate; (ii) the amount of the **Receivables** still unpaid (schedules) is sufficient to achieve the Minimum Amount of Guarantee, after said release; and (iii) there is no outstanding balance in the Contractual Account.

7.1.7.2. In case the events described above do not occur, **Itaú** is authorized to maintain the amounts originating from payment of the **Receivables** in the Escrow Account in a sufficient amount for these amounts, added to the amount of the **Receivables** still unpaid (schedules), to correspond to the Minimum Amount of Guarantee.

7.1.7.3. The amounts credited to the Escrow Account that, after the withholding set forth above, exceed the Minimum Amount of Guarantee shall be released by **Itaú** to the **Client.**

7.1.7.4. If, for any reason, any of the **Acquirers** does not send the information on the amount of the **Receivables** still unpaid (schedule) to be transferred by it to the Client in a given period, the Minimum Amount of Guarantee shall be calculated considering only the information with respect to the amount of Receivables still unpaid (schedule) actually sent by the other **Acquirers**.

7.1.7.5. **In case the Client does not have balance in the Escrow Account corresponding to the amount equal to the Minimum Amount of Guarantee on the date of execution of this Certificate, the Client shall supplement this amount until it reaches the Minimum Amount of Guarantee.**

7.1.8. The amounts relating to the settlement or advance payment of the **Receivables** credited to the Escrow Account shall be transferred by **Itaú** to the Checking Account and from the latter to the Contractual Account, for the amortization or settlement of the outstanding balance of such contractual account.

7.1.8.1. **Itaú** may maintain the Escrow Account balance invested; in this case, the rights on the investment and the yields obtained from the investment shall become part of the guarantee.

7.2. Other additional guarantees, if required by **Itaú**, provided by means of documents enclosed hereto, which form an integral part of this Certificate.

**8. Credit Facility Maturity and Renewal** – The Credit Facility shall be in effect until the date of sub-item 1.5. **Itaú** may renew the credit facility at its discretion. In such event, by the date of sub-item 1.5, **Itaú** shall provide information to the **Client** and to the **Joint Debtors,** at the branch indicated in sub-item 1.9 or at the ATMs, about the following specific conditions of this Certificate, which shall continue to be also governed by the other sections set forth herein:

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0█████ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The
verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.                                    Página 5 de 30

Translation No. I-54738
Book No. 657
Page 418



a) the credit facility amount;

b) the interest rate for the renewal date;

c) the credit facility opening commission amount;

d) the renewal date of the credit facility;

(e) the maturity date.

**8.1. The Joint Debtors agree with the renewal of the credit facility up to the amount indicated in sub-item 1.3 or up to the increased amount of credit facility set forth in sub-item 3.4., and agree that any amounts used after such renewal are subject to the maximum interest rate equivalent to the greatest rate informed by Itaú to the Central Bank of Brazil on the renewal date for transactions of the same nature.**

8.2. At each renewal of the credit facility, the contractual conditions of item 1 shall be modified by the new data that shall be informed by **Itaú** to the **Client.**

**8.3. If the Client or the Joint Debtors choose not to renew the credit facility or do not agree with the conditions informed for renewal thereof, they shall notify Itaú of their disagreement within 5 days as from the maturity date of the credit facility and immediately settle the outstanding balance, calculated in accordance with the previously effective conditions. The use of the credit facility after such term shall be deemed as the consent of the Client and the Joint Debtors with the conditions of renewal of the credit facility.**

**9. Delayed Payment and Fine** – Without prejudice to the possibility of acceleration, in case of delayed payment of any obligation of this Certificate, any amounts due and unpaid shall be accrued by the conventional interest indicated in sub-item 1.7, plus default interest of 1% per month, calculated on a prorata basis and capitalized on a daily basis, from the maturity date of the obligation to the date of actual payment thereof, in addition to a fine of two percent (2%).

9.1. In case of judicial or extrajudicial collection, the defaulting party shall pay collection expenses to the creditor party, including court costs and attorney's fees.

9.2. In case of default of the **Client, Itaú** shall be entitled to carry out the immediate execution of this Certificate and foreclosure of the respective guarantees.

**9.3. Itaú may offset any credits that it may owe to the Client or of the Joint Debtors against any credits that the Client or the Joint Debtors may owe to Itaú.**

**9.4. The Client and the Joint Debtors hereby irrevocably and irreversibly authorize Itaú to debit from any Checking Accounts held by them with Itaú, up to the limit permitted by the funds, all amounts due to Itaú under this Certificate.**

**10. Acceleration** - **Itaú** may consider any obligations arising out of this Certificate accelerated and reduce or terminate the credit facility, upon occurrence of any of the following:

a) default of any obligation arising out of this Certificate or of any instrument entered into by the **Client** with **Itaú** or with any company directly or indirectly controlled by **Itaú Unibanco Holding S.A.;**

b) if the **Client** files for or is adjudicated bankrupt, files for court-supervised or extrajudicial reorganization, is dissolved or suffers the protest of any instrument for whose payment it is liable;

c) death, insolvency, interdiction of any of the **Joint Debtors** or occurrence of any of the events described in item (b) in relation to any of the **Joint Debtors,** without presentation of a substitute acceptable to **Itaú** within 15 days as from occurrence of such event;

d) if the guarantees of this Certificate or of the exhibits hereto are not consummated or formalized or if said guarantees become inappropriate or insufficient to guarantee the obligations of this Certificate and are not replaced within 15 days as from notice from **Itaú;**

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0███ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br



**Translation No. I-54738**
**Book No. 657**
**Page 419**

e) if a final and non-appealable judgment is rendered due to the performance, by the **Client, Joint Debtors** or managers of the **Client** or of the **Joint Debtors,** of any acts resulting in race or gender discrimination, child labor, slave labor, moral or sexual harassment or crime against the environment;

f) upon occurrence of any process of corporate restructuring or change of direct or indirect control in which the **Client** is involved.

g) change of the business purpose or principal activity of the **Client** or disposal of any commercial establishment or of a material portion of assets or rights of its fixed assets.

h) if the **Client** is sued due to failure to pay a debt.

i) request, by the **Client**, to terminate the Checking Account held with **Itaú**.

10.1. The **Client** undertakes to immediately notify **Itaú** of the occurrence of any of the events described in items (b), (c), (e), (f) or (g), above.

**11. Tariffs** – For processing of this transaction and of any renewals of the credit facility and of the transactions between the accounts referred to in this Certificate, the **Client** shall pay the tariff set forth in the Table of Tariffs affixed on the **Itaú** branches in effect on the date hereof and on the dates of renewal of the credit facility.

**12. Disclosure of Delayed Payment** – If the **Client** fails to make any payment by the maturity date, **Itaú** may notify such fact to SERASA, SPC and anybody in charge of recording delayed payments and default of contractual obligations.

**13. Credit Information System (SCR)** – The **Client** and the **Joint Debtors** authorize, at any time, even after termination of this Agreement, **Itaú**, the companies of Itaú Unibanco Conglomerate and the other authorized institutions to consult the SCR in accordance with the provisions of the regulations and which acquire, receive or pronounce to be interested in acquiring or receiving as guarantee, wholly or in part, credit transactions for which the **Client** and the **Joint Debtors** are liable ("Authorized Institutions"), to consult information about it in the SCR.

13.1. The SCR is composed of information sent to the Central Bank of Brazil (BACEN) on credit transactions, pursuant to the provisions of the regulation. The purpose thereof is to provide BACEN with information to monitor the credit in the financial and inspection system, in addition to enabling the exchange of information among financial institutions.

13.1.1. The **Client** and the **Joint Debtors** represent to be aware that the consultations to the SCR shall be made based on this authorization and that the companies of the **Itaú Unibanco** Conglomerate may exchange information on the **Client** and the **Joint Debtors** contained in its record.

13.1.2. The **Client** and the **Joint Debtors** further represent to be aware that the data on the amount of their debts, both coming due and overdue, including overdue debts written off with loss, as well as the amount of the co-obligations they have assumed and of the guarantees they have provided shall be provided to the BACEN and registered with the SCR, which representation shall serve as prior communication of these records.

13.1.3. The **Client** and the **Joint Debtors** may have access, at any time, to their data in the SCR by the means provided by the BACEN, including on its website and, in the event of inconsistency, request the correction or exclusion thereof or the registration of a pronouncement on disagreement, as well as the registration of judicial measures, upon request to the service center of the institution that registered the data with the SCR.

**14. Environmental Liability** – The **Client** and the **Joint Debtors** represent that on the date hereof and during the term of effectiveness of this Certificate: (a) they comply and shall comply with the labor law relating to occupational health or safety, including in relation to slave or child labor; (b) their activities and properties are and shall be in compliance with the Brazilian environmental law, including in relation to the Biosafety Law; and (c) the funds arising out of this Certificate shall be solely allocated to lawful

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0▮▮▮ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP-  Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.                    Página 7 de 30



TRADUTORA PÚBLICA

purposes that strict comply with the law referred to herein.

14.1. The **Client** and the **Joint Debtors** shall provide **Itaú,** upon request, with any documents required by the applicable environmental and labor law for the purpose of certifying the regular performance of their activities.

14.2. Regardless of negligence, the **Client** and the **Joint Debtors** shall reimburse **Itaú** for any amount that it may be required to pay, and shall indemnify it for any damages and losses relating to any environmental or occupational health and safety damages which any authority believes to be related to the use of the funds arising out of this Certificate.

**15. Anti-money laundering and Anticorruption** – The **Client** acknowledges and declares that it complies with the law of anti-money laundering and terrorism financing and against acts of corruption and damages to the Brazilian and foreign public administration and shall immediately notify **Itaú** in case that it becomes aware of any act or fact relating to this Certificate that violates any rules, in which case **Itaú** may take any measures that it believes to be required.

**16. Expenses.** The **Client** shall pay all expenses arising out of the registration of this Certificate and the exhibits hereto, by means of debit from the Checking Account, in an amount informed by **Itaú** 5 days in advance.

**17. Total Effective Cost ("CET")** - The **Client** acknowledges the Total Effective Cost ("CET") before entering into this transaction, expressed as an annual percentage rate, indicated in the enclosed spreadsheet. The calculation of the CET considers: (a) the amount of the credit facility; (b) the transaction, estimated as 30 days; and (c) the conventional interest rate, the amount of the taxes, the bank tariffs and any other expenses provided for in this Certificate. The CET was calculated for the event of full use of the credit facility for the estimated term of 30 days; if that does not take place, the CET shall be smaller.

**18. Declaration of Reading** – The **Client** and the **Joint Debtors** declare that they read this Certificate and do not have any doubt in relation to any of its sections.

**19. Jurisdiction** – The Courts of the Judicial District of the place of issue of this Certificate are hereby elected as the courts of jurisdiction, and the party that brings a suit may choose the Courts of the **Client's** domicile.

**20. Delivery of Communications – The Client** hereby authorizes the delivery of communications relating to **Itaú** products and services, including by means of e-mails and mobile messages. This authorization may be cancelled at any time upon request to **Itaú** Service Center. For security reasons, **Itaú** may always send messages and information relating to suspected fraud, returned checks, grant of advance to the depositor and denied transactions. For these communications, the mobile number and the e-mail contained in the updated record shall be used.

**21. Assignment** – The **Client** and the **Joint Debtors** represent to be aware that **Itaú** may, at any time, assign this transaction, wholly or in part, to a company directly or indirectly controlled by Itaú Unibanco Holding S.A., as well as to third parties.

Place and date indicated on the first page of this Certificate.

**Client** (identified on the first page of this Certificate)

Signature(s): (sgd)

Name of the Legal Representative(s) (in full):

Rene Toshiro Abe

**Joint Debtors:**

| 1). | (illegible) |
|---|---|

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0 ▓ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The
verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.                    Página 8 de 30



**Translation No. I-54738**
**Book No. 657**
**Page 421**

| Name: | |
|---|---|
| CPF: | |
| Phone: | |
| Address: | |
| 3). | 4). |
| Name: | Name: |
| CPF/CNPJ: | CPF/CNPJ: |
| Phone: | Phone: |
| Address: | Address: |

**Amicable Resolution of Conflicts** – For consultations, information and transaction services, please go to www.itau.com.br or call 0300 100 7575, on business days, from 08:00 a.m. to 08:00 p.m., or talk with your manager. For complaints, cancellations and miscellaneous information, call the Customer Service Center (SAC): 0800 728 0728, available on a 24/7 basis. If you are not satisfied with the solution delivered, contact the Ombudsman's Office: 0800 570 0011, on business days from 09:00 a.m. to 06:00 p.m. Hearing/speaking impaired persons: 0800 722 1722, available on a 24/7 basis.

**6th Registry of Deeds and Documents and Civil Registry of Legal Entities of the Capital – CNPJ No.: 45.565.314/0001-70**

**Radislau Lamotta, Registrar**

| Emoluments | R$3,929.82 | Filed and preannotated under No. **1.853.019** on **September 6, 2018** and recorded today in microfilm under No. **1.852.965** under deeds and documents. |
|---|---|---|
| State | R$1,116.89 | |
| São Paulo State Social-Security Institute (IPESP) | R$764.46 | São Paulo, September 6, 2018 |
| Civil Registry | R$206.83 | (sgd) |
| Court of Justice | R$269.71 | Radislau Lamotta, Registrar |
| Public Prosecutors' Office | R$188.64 | Antonio Vilmar Carneiro, Authorized Clerk |
| Service Tax | R$82.36 | |
| Total | R$6,558.71 | |
| Stamps and fees paid in cash | | |

Stamp of Itaú – Accommodation – São Paulo

1ª VIA (NEGOCIÁVEL): ITAÚ UNIBANCO. 2ª VIA (NÃO NEGOCIÁVEL): CLIENTE. DEMAIS VIAS (NÃO NEGOCIÁVEIS): OUTROS INTERVENIENTES

Logo of Itaú Unibanco S.A.

<u>**AUTHORIZATION FOR CHANGE IN AND MAINTENANCE OF BANKING DOMICILE**</u>

| **1. Client Data** | |
|---|---|
| 1.1. Company name | 1.2. CNPJ No. |
| RAKUTEN BRASIL FINANCIAL SERVI | 22.366.799/0001-77 |

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0▇▇▇ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.



Translation No. I-54738
Book No. 657
Page 422

TRADUTORA PÚBLICA

| 2. Data of this authorization | | | |
|---|---|---|---|
| 2.1. Banking domicile to be maintained | | | |
| 2.1.1 Bank | 2.1.2 Branch | 2.1.3 Account No. | 2.1.4. Brand |
| 341 | ▓▓▓ | 15▓▓ | Master |
| | | | VISA |

2.2. Brands:

(x) Mastercard, Mastercard Maestro, Redeshop, and other brands processed by the Acquirers and informed by them to **Itaú**;

( ) Visa, Visa Electron and other brands processed by the **Acquirers** that are informed by them to **Itaú.**

2.3. Term of this authorization

UNTIL FINAL AND FULL SETTLEMENT OF THE SECURED TRANSACTION

2.4. Issue date and place 08/01/2018 - SÃO PAULO, SP

**3.** The **Client** identified in item 1 authorizes **Itaú Unibanco S.A.**, with its principal place of business at Praça Alfredo Egydio de Souza Aranha, No. 100, Olavo Setúbal Tower, São Paulo, State of São Paulo, National Corporate Taxpayers' Registry (CNPJ) No. 60.701.190/0001-04 **("Itaú")** to:

(i) notify the **Centralizing entity,** identified in sub-item 6.1, that the **Client** has formalized a financial transaction with Itaú linked to its present and future credit rights, resulting from all transactions with credit and/or debit cards of the Brands indicated in sub-item 2.2;

(ii) change, whenever the case, the banking domicile currently in effect to the new banking domicile indicated in sub-item 2.1;

(iii) request the **Centralizing entity** to maintain the banking domicile indicated in sub-item 2.1, from the date hereof to the date of sub-item 2.3, in relation to the type(s) of credit and debit transaction(s), relating to the Brands indicated in sub-item 2.2.

(iv) in case this banking domicile is linked to the centralizing chain of the **Client** (centralization of the flow of credit rights of more than one legal entity of the same corporate and/or economic group of the **Client** in a single Banking Domicile), adopt all necessary measures with the **Centralizing entity** for maintenance of all other banking domiciles of the **Client** that are related to the same centralizing chain, even if these banking domiciles have not been expressly indicated in this authorization or, in the event of impossibility to maintain all banking domiciles, request the **Centralizing Entity** to separate the centralizing chain, to enable the maintenance of banking domicile indicated herein;

(v) adopt all measures required before the **Centralizing Entity** for maintenance of all banking domiciles of the **Client** that have the same CNPJs (informed in Exhibit I) in the system of the **Centralizing Entity;**

(vi) have access to its information with the **Acquirers** or the **Centralizing Entity** relating to the debit transactions and/or credit transactions of the Brands indicated in sub-item 2.2; and

(vii) provide the **Acquirers** and the **Centralizing Entity** with all information and documents relating to the financial transaction that resulted in this authorization;

(viii) if the financial transaction executed by the **Client** may be renewed or if the maturity date thereof falls on a date after the lapse of thirty-six (36) months, request the **Centralizing Entity** to renew the maintenance of banking domicile as many times as necessary, until full settlement of the financial transaction, irrespective of the formalization of a new instrument of authorization;

(ix) whenever the maintenance of banking domicile set forth in this authorization is created in an escrow account linked to the financial transaction agreed with **Itaú,** request the **Centralizing Entity** to change

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0▓▓ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.                                          Página 10 de 30



the banking domicile to a checking account of free operation, held by it, to which the escrow account is related;

(x) whenever the maintenance of banking domicile set forth in this authorization is created in a checking account of free operation, request the **Centralizing Entity** to change the banking domicile to an escrow account linked to such checking account, relating to the financial transaction agreed with Itaú.

**4.** In the event of termination of any of the **Acquirer Agreements**, the **Client** authorizes the respective **Acquirer** to continue depositing the credits set forth in item 2 in the banking domicile indicated in sub-item 2.1 by the date indicated in sub-item 2.3.

**5.** The **Client** and **Itaú** acknowledge that: (a) the signature of this authorization is a condition for the **Acquirers** to simultaneously comply with the **Acquirer Agreement** and the Banking Domicile Maintenance Agreement executed between each **Acquirer** and **Itaú;** and (b) the **Acquirers** may request compliance with obligations set forth herein pursuant to the provisions of articles 436 and 437 of the Civil Code.

**6.** The **Client** represents to be aware that:

(i) the maintenance of banking domicile set forth in this authorization shall be binding upon all transactions relating to the Brands indicated in sub-item 2.2, irrespective of the **Acquirer** responsible for the capture, processing and settlement of said transactions;

(ii) the maintenance of banking domicile, whenever made based on the do CNPJ root (first nine digits), shall automatically bind all other CNPJ numbers that contain the same root and which do not have maintenance of previous banking domicile;

(iii) in the event of the preceding item, in case a new CNPJ containing the same root indicated herein is created, this new CNPJ shall also be bound to this authorization;

(iv) by the date of sub-item 2.3, the **Acquirers** shall not carry out transactions aiming at advancing the credits of point of sale the banking domicile is subject to maintenance, pursuant to the provisions hereof, except with the prior and express authorization of **Itaú;**

(v) the credit and debit transactions of any of the Brands set forth in sub-item 2.2 may be captured by the same **Acquirer**, by means of the same Equipment;

(vi) the maintenance of banking domicile set forth in this authorization shall be processed by **Itaú**, by the **Acquirers** and by the **Centralizing Entity** in accordance with the provisions of the Agreement for the Regulation and Protection of Guarantees of Receivables - "Guarantee Control System", the terms and conditions of which the **Client** represents to know.

**6.1.** For purposes of this authorization, the following definitions apply: (a) **Acquirer**: any and all legal entities that accredit individuals or legal entities for the acceptance of credit or debit cards as electronic means of payment in the acquisition of goods or services and which provides a technological solution or means of connection to the systems of the accredited parties for purposes of capturing and settling the transactions carried out by means of credit or debit cards; and (b) **Equipment**: electronic terminals or any other equipment, devices, information technology systems, computer programs, used by the **Client**, to enable credit and/or debit transactions; and (c) **Centralizing Entity:** Interbank Payment Chamber - CIP, the entity responsible for centralizing the registration, processing and transmission of information relating to the maintenance of banking domicile.

**7.** Once this authorization is signed, **Itaú** may request the **Centralizing Entity**, as from the date hereof, to maintain the banking domicile indicated in subsection 2.1, being liable to the **Client** for sending the information relating to such banking domicile maintenance.

The maintenance of banking domicile may only be cancelled before the date set forth in subsection 2.3 upon notice from **Itaú** to the **Centralizing Entity**. As from the business day following cancellation of the maintenance of banking domicile pursuant to the authorization of **Itaú**, or as from the maturity date

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.0▮▮ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The
verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.                    Página 11 de 30



**Sandra Regina Mattos Rudzit**

TRADUTORA PÚBLICA

indicated in sub-item 2.3, the **Client** may request the **Acquirers** to change the banking domicile indicated in sub-item 2.1.

(sgd)

**Client**

Data of the **Client's** representatives:

| Name: Rene Toshiro Abe | | Name: |
|---|---|---|
| Taxpayer ID (CPF): 132 125 2▓ | Identity Card (RG): 1654▓ | Taxpayer ID (CPF): <br><br> Identity Card (RG): |
| Title: CEO | | Title: |

Stamp of Itaú – Accommodation – São Paulo

### EXHIBIT I TO THE AUTHORIZATION FOR CHANGE IN AND MAINTENANCE OF BANKING DOMICILE

| 22.366.799/0001-77 | |
|---|---|

24254-5 (Page _/_) 01/15

1st counterpart: Itaú – 2nd counterpart: Client

Certificate of Enrollment and Registration Status

**Certificate of Enrollment and Registration Status**

**Taxpayer:**

Please check the Identification details of the Legal Entity. In case of any inconsistency, please provide its registration update with the Brazilian Federal Revenue Office.

The information on the size contained in this certificate is as declared by the taxpayer.

### FEDERATIVE REPUBLIC OF BRAZIL

### NATIONAL CORPORATE TAXPAYERS REGISTER

| ENROLLMENT NUMBER | CERTIFICATE OF ENROLLMENT AND REGISTRATION STATUS | OPENING DATE |
|---|---|---|
| **22.366.799/0001-77** <br> **HEAD OFFICE** | | **04/30/2015** |

COMPANY NAME

**RAKUTEN BRASIL FINANCIAL SERVICES LTDA**

| DOING BUSINESS AS (ASSUMED NAME) | SIZE |
|---|---|
| ******** | **OTHER** |

| CODE AND DESCRIPTION OF THE PRIMARY ACTIVITY |
|---|
| **82.91-1-00 – Collection and Registration information activities** |

| CODE AND DESCRIPTION OF SECONDARY BUSINESS ACTIVITIES |
|---|
| **64.63-8-00 – Other equity interest companies, except holding companies** |

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0▓ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.                    Página 12 de 30



**Translation No. I-54738**
**Book No. 657**
**Page 425**

| | | |
|---|---|---|
| **74.90-1-04 – Intermediation and agency of services and businesses in general, except real estate ones** | | |
| CODE AND DESCRIPTION OF THE TYPE OF ORGANIZATION | | |
| **206-2 – Limited Liability Company** | | |
| STREET | NUMBER | COMPLEMENT |
| **AV FRANCISCO MATARAZZO** | **1500** | **: NEW YORK TOWER; FLOOR: 6; SUITE: 7;** |
| POSTAL CODE (CEP) | DISTRICT | CITY | STATE (UF) |
| **05.001-100** | **ÁGUA BRANCA** | **SAO PAULO** | **SP** |
| ELECTRONIC ADDRESS | | TELEPHONE |
| **ADMINISTRATIVO@RAKUTEN.COM.BR** | | **(11) 3874-4600** |
| FEDERATED ENTITY IN CHARGE (EFR) | | |
| ***** | | |
| REGISTRATION STATUS | | DATE OF THE REGISTRATION STATUS |
| **ACTIVE** | | **04/30/2015** |
| REASON FOR THE REGISTRATION STATUS | | |
| SPECIAL STATUS | | DATE OF THE SPECIAL STATUS |
| ******** | | ******** |

Approved under Brazilian Federal Revenue (RFB) Normative Instruction No. 1.634 of May 6, 2016.

Issued on **August 30, 2018** at **2:40:04 P.M.** (Brasília date and time).

View Table of Partners and Shareholders (QSA)/Share Capital

Back

Page: _/_

Prepare Page for Printing

Stamp of Itaú – Accommodation – São Paulo

The Brazilian Federal Revenue Office (RFB) thanks you for your visit. For information on the privacy policy and usage, click here.

Refresh your page

http://www.receita.fazenda.gov.br/pessoajuridica/cnpj/cnpjreva/Cnpjreva_Comprovan...

08/30/2018

**Letterhead of the 6th Registry of Deeds and Documents and Civil Registry of Legal Entities of the Judicial District of São Paulo**

*Registrar: Radislau Lamotta*

**REGISTRATION FOR PURPOSES OF PUBLICITY AND EFFECTIVENESS BEFORE THIRD PARTIES**

**No. 1.852.965 of 09/06/2018**

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.          Página 13 de 30

**Translation No. I-54738**
**Book No. 657**
**Page 426**

Sandra Regina Mattos Rudzit

TRADUTORA PÚBLICA

**I certify** that the document in hard copy, was submitted on 09/06/2018, which was filed under No. 1.853.019, and electronically registered under No. **1.852.965** in Register B of this 6th Registry of Deeds and Documents of the Judicial District of São Paulo, on the date hereof.

**Nature:**

CREDIT CERTIFICATE

São Paulo, September 6, 2018

(sgd)

Antonio Vilmar Carneiro

Authorized Clerk

This certificate is an **integral** and **inseparable** part of the registration of the document described above.

| Emoluments | State | São Paulo state Social-Security Institute (IPESP) | Civil Registry | Court of Justice |
|---|---|---|---|---|
| R$3,929.82 | R$1,116.89 | R$764.46 | R$206.83 | R$269.71 |
| Public Prosecutor's Office | Tax on Services (ISS) | Conduction | Other Expenses | Total |
| R$188.64 | R$82.36 | R$0.00 | R$0.00 | R$6,558.71 |

| (QR code) | To check the full contents of the document, access the website: **servicos.cdtsp.com.br/validarregistro** and inform the key below or use a QR code reader. **00171870202234346** | (QR code) | To check the authenticity of this document, access the website of the Disciplinary Board of the Courts: **https://selodigital.tjsp.jus.br** Digital Stamp **1136544TIBE000003092CE18V** |
|---|---|---|---|

7307/09957-7 Seq:53

**BANCO ITAU-Q.A. – 23635 - 5**

**20,000,000.00**

**7307**

**09957 – 7 – Id Legacy Box: 4687121**

**SKP Box: 816261265**

**DOCUMENT ID**

**143051556**

Barcode: "*000014J051556"

**IF 143051556**

**B325E RET 248308098 – 000001 RT ID: 5A**

**BS-12-G1-1-AG-0018-J-01-04 0103000600**

**SKP: 815261265 – 00046**

**REF1 4687121**

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0██ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br



**Translation No. I-54738**
**Book No. 657**
**Page 427**

**7307/09957 – 7**

**Fex & Ref 7993553**

**R**

**CUST:4687121**

**NRM**

**Srv: 02/12 4:00pm BRT**

**To: *****

**JHONATAN JESUS SILV**

**SCHD**

Pages initialed.
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, September 16, 2021*

*Fees: R$2,191.81*

*Receipt No. 24020*

SANDRA REGINA MATTOS RUDZIT
*Certified Translator*

pas/305533.doc

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.0██ RG 8.222 837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just trd br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The
verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.





**VIA BANCO**

1852965

MICROFILME

**Itaú** Itaú Unibanco S.A.

**Cédula de Crédito Bancário**
**Abertura de Crédito em Conta Corrente**
**(Conta Hot Mensal - Recebíveis de Cartão)**

Nome empresarial do emitente

RAKUTEN BRASIL FINANCIAL SERV

qualificado na Proposta de Abertura da Conta Corrente indicada no subitem 1.9, designado **Cliente.**

## 1. Dados desta Cédula de Crédito Bancário

| 1.1. Data de Emissão | 1.2. Conta Contratual | | | | 1.3. Limite de Crédito | 1.4. Vencimento desta Cédula | 1.5. Vencimento do Limite Crédito |
|---|---|---|---|---|---|---|---|
| | Agência | Conta nº | DAC | Categoria | | | |
| 01/08/2018 | 7307 | 3■■■■ | 2 | 478-8 | R$ 20.000.000,00 | À VISTA | 30/08/2018 |

| 1.6. Comissão de Abertura de Crédito | 1.7. Taxa de Juros válida para esta data | | | |
|---|---|---|---|---|
| | 1.7.1. Por mês (30 dias) | 1.7.2. Ao ano (360 dias) | 1.7.3. Taxa Referencial | 1.7.4.Periodicidade da Capitalização |
| 0,00 % do limite de crédito | 0,20 % | 2,53 % | 100,00 % DI-Over (Extragrupo) | MENSAL |

| 1.8. Dia de Pagamento dos Encargos | 1.9. Conta Corrente | | | 1.10. Conta Vinculada | | | 1.11. Código da Garantia (uso interno do Itaú) |
|---|---|---|---|---|---|---|---|
| | Agência | Conta nº | DAC | Agência | Conta nº | DAC | |
| 30 | 7307 | 0■■■■ | 7 | 7307 | 1■■■ | 8 | 418 |

| 1.12. Local de Emissão | 1.13. Local de Pagamento |
|---|---|
| SAO PAULO,SP | SAO PAULO,SP |

Na data da apresentação, que poderá ser feita dentro do prazo de 20 anos, o **Cliente** pagará por esta Cédula de Crédito Bancário ("**Cédula**"), ao **Itaú Unibanco S.A.**, com sede na Praça Alfredo Egydio de Souza Aranha, nº 100 - Torre Olavo Setúbal, São Paulo, SP, CNPJ n.º 60.701.190/0001-04, designado **Itaú**, a dívida em dinheiro, certa, líquida e exigível, correspondente ao valor total utilizado do limite de crédito aberto indicado no subitem 1.3 ("**Limite**"), mais os encargos previstos nesta Cédula.

Na data indicada no subitem 1.8 e no vencimento do limite indicado no subitem 1.5 o **Cliente** pagará ao **Itaú** os encargos e os valores utilizados do limite, nos termos desta Cédula.

**2. Objeto** - O **Itaú** concederá ao **Cliente** limite rotativo disponibilizado na Conta Corrente indicada no subitem 1.9 ("**Conta Corrente**"), desde que constituída(s) a(s) garantia(s) prevista(s) no item "Garantias" desta Cédula.

**3. Utilização do Limite** - O limite será utilizado pelo **Cliente** de uma só vez ou em parcelas, mediante solicitações de transferências de valores da Conta Contratual indicada no subitem 1.2 ("**Conta Contratual**") para a Conta Corrente, que o **Itaú** atenderá conforme segue:

3.1. O **Cliente** solicitará as transferências nas agências ou através dos serviços de conveniência do **Itaú**, se contratados pelo **Cliente**.

3.2. A existência de saldo descoberto na Conta Corrente configurará solicitação de utilização do limite no valor desse saldo, que o **Itaú** atenderá, respeitado o limite disponível, transferindo o valor correspondente da Conta Contratual para a Conta Corrente.

3.3. A transferência efetuada pelo **Itaú** caracterizará a utilização do limite pelo **Cliente** e o saldo devedor da Conta Contratual corresponderá, em cada momento, ao total dos valores utilizados.

3.4. O valor do limite poderá ser aumentado a qualquer tempo, a critério do **Itaú**, o que fica desde já autorizado pelo **Cliente** e pelos **Devedores Solidários**.

   3.4.1. O **Cliente** responsabiliza-se pela comunicação do referido aumento de limite aos **Devedores Solidários**.

   3.4.2. Caso o **Cliente** ou os **Devedores Solidários** não concordem com o aumento do limite, deverão comunicar a discordância ao Itaú em até 5 dias a contar da data de aumento do limite para que seja restabelecido o limite anterior. A utilização do limite após esse prazo significará a concordância do Cliente e dos Devedores Solidários com o novo valor do limite.

3.5. A utilização do limite ficará sempre condicionada à constituição e manutenção das garantias nos termos do item "Garantias" desta Cédula e o Itaú só atenderá as solicitações de utilização do limite que estiverem cobertas pelas garantias contratadas.

M 135624

3.6. **Os extratos das Contas Corrente, Contratual e Vinculada e as planilhas de cálculo fazem parte desta Cédula e os valores deles constantes, apurados de acordo com esta Cédula, são líquidos, certos e determinados. Se o Cliente não concordar com os valores de qualquer extrato ou planilha, deverá comunicar o Itaú, por escrito, e, se não o fizer, em 5 dias a contar do término de vigência desta Cédula, esses documentos constituirão prova documental da utilização, certeza e liquidez do crédito.**

3.7. O limite poderá, a critério do **Itaú**, ser reduzido a qualquer tempo, durante o prazo de vencimento estipulado no subitem 1.5., nas seguintes hipóteses:

 (i) se o **Cliente** tiver seu nome cadastrado nos órgãos de proteção ao crédito;

 (ii) verificação de atraso do **Cliente** no pagamento de obrigações perante outras instituições financeiras ou seus fornecedores;

 (iii) aumento do endividamento do **Cliente** em montante incompatível com seu faturamento;

 (iv) existência de ação judicial movida contra o **Cliente** que possa implicar na impossibilidade de cumprimento de suas obrigações ou de manutenção de seu funcionamento ou atividade.

3.8. O **Itaú** colocará à disposição do **Cliente**, mensalmente, planilha de cálculo, na qual evidenciará, para cada período considerado:

 a) o limite;

 b) o saldo devedor diário;

 c) o período de cálculo dos encargos;

 d) a data de débito dos encargos;

 e) o valor total dos encargos cobrados no período, correspondente à soma dos encargos calculados diariamente conforme taxa vigente do dia;

 f) a comissão de abertura de crédito e a data de vencimento do limite;

 g) a alíquota do IOF e o total desse imposto, calculado conforme a legislação;

 h) as tarifas de contratação e de cobrança.

3.9. O **Itaú** colocará à disposição do **Cliente** no **Itaú Empresas na Internet** (*internet banking*) as seguintes informações, relativamente a cada dia do período:

 a) a utilização diária do limite contratual;

 b) a taxa de juros por 30 dias;

 c) a taxa referencial DI-Over (Extragrupo);

 d) a porcentagem sobre a taxa referencial;

 e) a taxa de juros vigente a cada dia;

 f) a taxa efetiva de juros mensal;

 g) a taxa efetiva de juros anual;

 h) o valor dos encargos diários calculados.

**4. Encargos e Pagamento** - O **Cliente** pagará ao **Itaú** os encargos indicados neste item e, no vencimento do limite, o total dos valores utilizados.

4.1. Mensalmente, no dia indicado no subitem 8, e no vencimento do limite, os juros capitalizados, acumulados no período, calculados diariamente sobre o valor utilizado do limite, mediante a aplicação da taxa obtida pela fórmula a seguir:

$$Taxa = \left[ \frac{i_{am}}{100 \times D.U.} \right] + \left[ \left( \frac{CDI_{am}}{3000} \right) \times \left( \frac{P}{100} \right) \right]$$

onde:

iam = taxa de juros por 30 dias (subitem 1.7.1)

CDIam = DI-Over (Extragrupo)

P = percentual do DI-Over (Extragrupo) indicado no subitem 1.7.3

D.U. = quantidade de dias úteis do mês.

6º Oficial R.T.D. e Civil de Pessoa Jurídica

1852965

MICROFILME

4.2. Entende-se por (a) "Período de Cálculo dos Encargos": período no qual são calculados os encargos, sendo o primeiro iniciado na data de utilização do Crédito, desde que o limite esteja ativo; (b) "DI - Depósito Interfinanceiro": a aplicação de valores a prazo feita por uma instituição financeira em outra, pré ou pós-fixada; (c) "DI-Over-Cetip": a taxa média dos DI prefixados pactuados entre instituições financeiras que não integrem um mesmo grupo societário, por 1 dia, apurada pelo CETIP (Central de Custódia e de Liquidação Financeira de Títulos ) e publicada pela imprensa.

4.3. Nesta data e nas datas de renovação do limite, o **Cliente** pagará a comissão de abertura de crédito, à taxa do subitem 1.6, incidente sobre o limite indicado no subitem 1.3. Se ocorrer vencimento antecipado desta Cédula, o **Itaú** devolverá ao **Cliente** a comissão proporcional ao período a decorrer entre a data do vencimento antecipado e a data de vencimento acordada.

4.4. **O Itaú poderá repassar ao Cliente o valor de tributos e encargos que venham a ser criados ou aumentados, exigíveis em razão desta Cédula, mediante informação prévia ao Cliente.**

4.5. **O Cliente pagará o imposto sobre operações financeiras (IOF) conforme a legislação em vigor.**

23635-6 (FL 2/7) GJNE v05/18 ...ation certificate ... VIA (NEGOCIÁVEL): ITAÚ UNIBANCO; 2ª VIA (NÃO NEGOCIÁVEL): CLIENTE; DEMAIS VIAS (NÃO NEGOCIÁVEIS): OUTROS INTERVENIENTES

verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.                                             Página 18 de 30

4.6. O **Cliente** reconhece a taxa referencial indicada no subitem 1.7.3 como legítima, publicamente divulgada e regularmente calculada de forma imparcial. Na hipótese de extinção, limitação, não divulgação, proibição legal ou judicial de utilização da taxa DI-OVER (Extragrupo), será utilizada a taxa SELIC (Sistema Integrado de Liquidação e Custódia), fixada pelo Conselho de Política Monetária - COPOM e divulgada pelo Banco Central do Brasil - BACEN.

**5. Modo de Pagamento -** O **Cliente** pagará ao **Itaú:**

a) juros e demais encargos mediante débito que o **Itaú** fará na Conta Corrente; e;

b) no vencimento do limite, os valores utilizados, mediante transferência que o **Itaú** fará da Conta Corrente para a Conta Contratual.

5.1. O **Cliente**, desde já, autoriza o **Itaú** a efetuar os débitos acima na Conta Corrente, que deverá ter saldo disponível suficiente. A insuficiência de saldo disponível na Conta Corrente configurará atraso no pagamento e autoriza o **Itaú**, a seu critério, a fazer a transferência ou o débito gerando adiantamento a depositante, nos termos do Contrato de Abertura da Conta Corrente.

**6. Devedores Solidários -** As pessoas ao final nomeadas, designadas **Devedores Solidários**, declaram-se solidariamente responsáveis pelas obrigações do **Cliente** nesta **Cédula**.

**7. Garantias -** Para garantir o pagamento de qualquer valor relacionado a esta **Cédula**, são constituídas as seguintes garantias:

7.1. Cessão fiduciária dos seus créditos, atuais e futuros, perante as **Credenciadoras**, decorrentes de transações de aquisição de produtos e serviços oferecidos em seus pontos de venda e pagos com o uso dos cartões de crédito ou de débito das Bandeiras indicadas no Termo de Autorização de Manutenção de Domicílio Bancário, anexo a esta Cédula ("**Recebíveis**").

7.1.1. Entende-se por: (a) "**Bandeiras**": bandeiras processadas pelas **Credenciadoras**, conforme informadas no Termo de Autorização de Manutenção de Domicílio Bancário; e (b) "**Credenciadoras**": qualquer pessoa jurídica que credencia pessoas para aceitação de cartões de crédito e/ou débito das Bandeiras como meio de pagamento na aquisição de bens e/ou serviços e que disponibiliza solução tecnológica e/ou meios de conexão aos sistemas das pessoas credenciadas para captura e liquidação de transações efetuadas com os referidos cartões.

7.1.2. O **Cliente** obriga-se a solicitar imediatamente ao banco detentor do domicílio bancário dos **Recebíveis**, no caso de alteração do referido domicílio, a devida liberação perante a entidade responsável pelo registro dos domicílios bancários para pagamento dos **Recebíveis**, da manutenção de domicílio bancário constituída em favor daquele banco, liberação esta que deverá estar concluída no prazo de 30 dias a contar da data desta Cédula.

7.1.3. O **Cliente** manterá o domicílio bancário inalterado até a liquidação de todas as obrigações desta Cédula e não poderá solicitar sua alteração a nenhuma das **Credenciadoras** ou à entidade responsável pelo registro dos domicílios bancários para pagamento dos **Recebíveis** sem expressa anuência do **Itaú**.

7.1.4. A anuência do **Itaú** à alteração do domicílio bancário produzirá efeitos dem até 5 dias úteis da data da aceitação pelo **Itaú**.

7.1.5. Se alguma das **Credenciadoras** fizer antecipação de pagamento dos Recebíveis, essa antecipação será feita exclusivamente por meio de crédito na Conta Vinculada.

7.1.6. **Na vigência desta Cédula o Cliente não poderá dar os Recebíveis em garantia de outras operações de crédito, exceto para operações firmadas com o Itaú, nem recusar, limitar ou restringir o uso dos cartões referidos no subitem 7.1 para pagamento dos produtos e serviços que fornecer.**

7.1.7. Até a integral liquidação do saldo devedor decorrente desta Cédula, o valor dos **Recebíveis** ainda não pagos (agendas), conforme informados pelas **Credenciadoras**, somado ao saldo da Conta Vinculada deverá totalizar montante igual ao Valor Mínimo da Garantia, que corresponderá ao valor equivalente ao saldo devedor total decorrente desta Cédula.

7.1.7.1. O **Itaú** somente liberará ao **Cliente** os valores creditados na Conta Vinculada, creditando-os na Conta Corrente, se: (i) o **Cliente** encontrar-se adimplente com todas as obrigações decorrentes desta Cédula; (ii) o montante dos Recebíveis ainda não pagos (agendas) seja suficiente para atender ao Valor Mínimo da Garantia, após referida liberação; e (iii) não haja saldo devedor na Conta Contratual.

6º Oficial R.T.D. e Civil de Pessoa Jurídica     1062065     MICROFILME

7.1.7.2. Caso não se verifiquem as hipóteses descritas acima, o **Itaú** fica autorizado a manter os valores provenientes do pagamento dos **Recebíveis** na Conta Vinculada em montante suficiente para que tais valores, somados ao valor dos **Recebíveis** ainda não pagos (agendas), passe a corresponder ao Valor Mínimo da Garantia.

7.1.7.3. Os valores depositados na Conta Vinculada que, após a retenção prevista acima, excederem ao Valor Mínimo da Garantia serão liberados pelo **Itaú** para o **Cliente**.

7.1.7.4. Caso, por qualquer motivo, alguma das **Credenciadoras** não enviar a informação do montante dos **Recebíveis** ainda não pagos (agenda) que serão por ela repassados ao **Cliente** em determinado período, o cálculo do Valor Mínimo da Garantia será efetuado considerando apenas as informações quanto ao montante dos **Recebíveis** ainda não pagos (agendas) efetivamente enviadas pelas demais **Credenciadoras**.

7.1.7.5. **Caso o Cliente não possua saldo na Conta Vinculada correspondente ao montante igual ao Valor Mínimo de Garantia na data de assinatura desta Cédula, o Cliente deverá complementar este valor até que seja alcançado o Valor Mínimo de Garantia.**

7.1.8. Os valores relativos à liquidação ou antecipação de pagamento dos **Recebíveis** creditados na Conta Vinculada serão transferidos pelo **Itaú** para a Conta Corrente e desta para Conta Contratual, para a amortização ou liquidação do saldo devedor dessa conta contratual.

7.1.8.1. O **Itaú** poderá manter o saldo da Conta Vinculada aplicado; nessa hipótese, os direitos sobre a aplicação e os rendimentos auferidos pela aplicação integrarão a garantia.

7.2. Outras garantias adicionais, se exigidas pelo **Itaú**, prestadas por meio de documentos anexos, parte integrante desta **Cédula**.

8. **Vencimento e Renovação do Limite** – O limite vigorará até a data do subitem 1.5. O **Itaú**, a seu critério, poderá renovar o limite. Nessa hipótese, até a data do subitem 1.5, colocará à disposição do **Cliente** e dos **Devedores Solidários**, na agência citada no subitem 1.9, ou nos terminais de autoatendimento, informações sobre as seguintes condições específicas desta **Cédula**, que continuará a reger-se também pelas outras cláusulas aqui previstas:

a) o limite;

b) a taxa de juros para o dia da renovação;

c) o valor da comissão de abertura de crédito;

d) a data da renovação do limite;

e) a data de vencimento.

8.1. **Os Devedores Solidários concordam com a renovação do limite até o valor indicado no subitem 1.3 ou até o valor limite aumentado conforme previsto no subitem 3.4 e que os valores utilizados após a renovação estejam sujeitos à taxa de juros equivalente, no máximo, à maior taxa informada pelo Itaú ao Banco Central do Brasil, na data da renovação, para operação desta mesma natureza.**

8.2. A cada renovação do limite, as condições contratuais do item 1 serão alteradas pelos novos dados que o **Itaú** informará ao **Cliente**.

8.3. **Se o Cliente ou os Devedores Solidários não optarem pela renovação do limite ou não concordarem com as condições informadas para sua renovação, devem comunicar a discordância ao Itaú em até 5 dias após a data de vencimento do limite e, imediatamente, liquidar o saldo devedor, calculado conforme as condições anteriormente em vigor. A utilização do limite após esse prazo significará a concordância do Cliente e dos Devedores Solidários com as condições de renovação do limite.**

9. **Atraso de Pagamento e Multa** - Sem prejuízo da possibilidade de vencimento antecipado, se houver atraso no pagamento de obrigação desta **Cédula**, incidirão sobre os valores devidos e não pagos juros remuneratórios do subitem 1.7, acrescidos de juros moratórios de 1% ao mês, calculados de forma pro rata e capitalizados diariamente, desde a data de vencimento da obrigação até a data de seu efetivo pagamento e multa de 2%.

9.1. No caso de cobrança judicial ou extrajudicial, a parte inadimplente pagará à parte credora despesas de cobrança, inclusive custas e honorários advocatícios.

9.2. O inadimplemento do **Cliente** autoriza o **Itaú** a promover a imediata execução desta **Cédula** e a excussão das respectivas garantias.

...ation certificate ... VIA (NEGOCIÁVEL) ; ITAÚ UNIBANCO : 2ª VIA (NÃO NEGOCIÁVEL) ; CLIENTE; DEMAIS VIAS (NÃO NEGOCIÁVEIS); OUTROS INTERVENIENTES verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.

9.3. **O Itaú poderá compensar quaisquer créditos que tenha em face do Cliente ou dos Devedores Solidários com créditos que o Cliente ou os Devedores Solidários tenham perante o Itaú.**

9.4. **O Cliente e os Devedores Solidários, neste ato, de forma irretratável e irrevogável, autorizam o Itaú a debitar de quaisquer Contas Correntes por eles mantidas junto ao Itaú, até quando os fundos comportarem, todas as quantias que sejam devidas ao Itaú por força desta Cédula.**

10. **Vencimento Antecipado** - O Itaú poderá considerar antecipadamente vencidas as obrigações decorrentes desta Cédula e reduzir ou encerrar o limite, na ocorrência de qualquer dos seguintes casos:

   a) inadimplemento de qualquer obrigação decorrente desta Cédula ou de qualquer instrumento celebrado pelo **Cliente** com o **Itaú** ou com qualquer sociedade controlada, direta ou indiretamente, pela **Itaú Unibanco Holding S.A.**;

   b) se o **Cliente** tiver requerida ou decretada sua falência, propuser recuperação judicial ou extrajudicial, for dissolvido ou sofrer protesto de título cujo pagamento seja responsável;

   c) morte, insolvência, interdição de qualquer um dos **Devedores Solidários**, ou ocorrência de qualquer dos eventos descritos no item (b) em relação a qualquer dos **Devedores Solidários**, sem apresentação de substituto aceito pelo **Itaú**, no prazo de 15 dias da ocorrência do evento;

   d) se as garantias desta Cédula ou de seus anexos, não forem efetivadas ou formalizadas ou se tais garantias se tornarem impróprias ou insuficientes para assegurar as obrigações desta Cédula e não forem substituídas no prazo de 15 dias de comunicação do **Itaú**;

   e) houver sentença transitada em julgado em razão de prática, pelo **Cliente, Devedores Solidários** ou administradores do **Cliente** ou dos **Devedores Solidários**, de atos que importem em discriminação de raça ou de gênero, trabalho infantil, trabalho escravo, assédio moral ou sexual ou crime contra o meio ambiente;

   f) se ocorrer qualquer processo de reorganização societária ou de alteração de controle, direito ou indireto, em que o **Cliente** esteja envolvido.

   g) alteração do objeto social ou da atividade principal do **Cliente** ou alienação de estabelecimento comercial ou de parcela significativa de bens ou direitos de seu ativo permanente.

   h) se o **Cliente** for acionado judicialmente por não pagamento de dívida.

   i) solicitação, pelo **Cliente,** do encerramento da Conta Corrente mantida no **Itaú**.

   10.1. O **Cliente** obriga-se a comunicar ao **Itaú**, imediatamente, a ocorrência de qualquer dos eventos descritos nos itens (b), (c), (e), (f) ou (g), acima.

11. **Tarifas -** Pelo processamento desta operação e das renovações do limite e da movimentação entre as contas mencionadas nesta Cédula, o **Cliente** pagará a tarifa prevista na Tabela de Tarifas, afixada nas agências do **Itaú**, em vigor nesta data e nas datas de renovação do limite.

12. **Divulgação de Atraso no Pagamento -** Caso não seja verificado o pagamento na data do vencimento, o **Itaú** poderá comunicar o fato à SERASA, ao SPC e a qualquer órgão encarregado de cadastrar atraso de pagamento e descumprimento de obrigação contratual.

13. **Sistema de Informações de Crédito (SCR) -** O **Cliente** e os **Devedores Solidários** autorizam, a qualquer tempo, mesmo após o término deste Contrato, o **Itaú**, as sociedades do Conglomerado Itaú Unibanco e as demais instituições aptas a consultar o SCR nos termos da regulamentação e que adquiram, recebam ou manifestem interesse em adquirir ou de receber em garantia, total ou parcialmente, operações de crédito de responsabilidade do **Cliente** e dos **Devedores Solidários** ("Instituições Autorizadas"), a consultar no SCR informações a seu respeito.

   13.1. O SCR é constituído por informações remetidas ao Banco Central do Brasil (BACEN) sobre operações de crédito, nos termos da regulamentação. A sua finalidade é prover ao BACEN informações para monitoramento do crédito no sistema financeiro e fiscalização, além de viabilizar o intercâmbio de informações entre instituições financeiras.

   13.1.1. O **Cliente** e os **Devedores Solidários** declaram-se cientes de que as consultas ao SCR serão realizadas com base na presente autorização e que as sociedades do Conglomerado **Itaú Unibanco** poderão trocar entre si as informações do **Cliente** e dos **Devedores Solidários** constantes do seu cadastro.

13.1.2. O **Cliente** e os **Devedores Solidários** declaram, ainda, ciência de que os dados sobre o montante das suas dívidas a vencer e vencidas, inclusive em atraso e baixadas com prejuízo, bem como o valor das coobrigações que tenham assumido e das garantias que tenham prestado serão fornecidos ao BACEN e registrados no SCR, valendo essa declaração como comunicação prévia desses registros.

13.1.3. O **Cliente** e os **Devedores Solidários** poderão ter acesso, a qualquer tempo, aos seus dados no SCR pelos meios disponibilizados pelo BACEN, inclusive seu *site* e, em caso de divergência, pedir sua correção, exclusão ou registro de manifestação de discordância, bem como cadastramento de medidas judiciais, mediante solicitação à central de atendimento da instituição que efetivou o registro dos dados no SCR.

14. **Responsabilidade Ambiental** - O **Cliente** e os **Devedores Solidários** declaram que, nesta data e durante a vigência desta Cédula: (a) respeitam e respeitarão a legislação trabalhista relativa à saúde ou segurança ocupacional, inclusive quanto a trabalho escravo ou infantil; (b) suas atividades e propriedades estão e estarão em conformidade com a legislação ambiental brasileira, inclusive quanto à Lei de Biossegurança; e (c) os recursos decorrentes desta Cédula serão destinados apenas a finalidades lícitas que atendam rigorosamente à legislação aqui mencionada.

14.1. O **Cliente** e os **Devedores Solidários** apresentarão ao **Itaú**, quando solicitado, os documentos exigidos pela legislação ambiental e trabalhista vigentes, com o fim de atestar o regular desempenho de suas atividades.

14.2. Independentemente de culpa, o **Cliente** e os **Devedores Solidários** ressarcirão o **Itaú** de qualquer quantia que este seja compelido a pagar, e o indenizarão por quaisquer perdas e danos referentes a danos ambientais ou relativos a saúde e segurança ocupacional que a autoridade entenda estar relacionado à utilização dos recursos decorrentes desta Cédula.

15. **Combate e Prevenção à Lavagem de Dinheiro e à Corrupção** – O **Cliente** declara conhecer e respeitar a legislação de prevenção à lavagem de dinheiro e financiamento ao terrorismo e de atos de corrupção e lesivos contra a administração pública nacional e estrangeira e comunicará imediatamente o **Itaú** caso tenha ciência de qualquer ato ou fato relacionado a esta Cédula que viole normas, podendo o **Itaú** tomar as providências que entender necessárias.

16. **Despesas** - O **Cliente** pagará todas as despesas decorrentes do registro desta Cédula e de seus anexos, mediante débito na Conta Corrente, em valor informado pelo **Itaú** com 5 dias de antecedência.

17. **Custo Efetivo Total ("CET")** - declara que tomou ciência do Custo Efetivo Total ("CET") previamente à contratação desta operação, expresso na forma de taxa percentual anual, indicado na planilha anexa. Para o cálculo do CET são considerados: (a) o valor do limite; (b) o prazo da operação, estimado em 30 dias; e (c) a taxa de juros remuneratórios, o valor dos tributos, das tarifas bancárias e das demais despesas previstas nesta Cédula. O CET foi calculado para a hipótese de utilização integral do limite pelo prazo estimado de 30 dias, se isso não ocorrer, o CET será inferior.

18. **Declaração de Leitura** - O **Cliente** e os **Devedores Solidários** declaram que leram esta Cédula e que não possuem nenhuma dúvida com relação a quaisquer de suas cláusulas.

19. **Foro** - Fica eleito o Foro da Comarca do local de emissão desta Cédula, podendo a parte que promover a ação optar pelo Foro do domicílio do **Cliente**.

20. **Envio de Comunicações** - O **Cliente** autoriza, desde já, o envio de comunicações relativas a produtos e serviços do **Itaú**, inclusive por meio de e-mails e mensagens de telefone celular. A presente autorização poderá ser cancelada a qualquer tempo mediante solicitação à Central de Atendimento do **Itaú**. Por questões de segurança, o **Itaú** sempre poderá enviar mensagens e informações referentes à suspeita de fraude, cheques devolvidos, concessão de adiantamento à depositante e transações negadas. Para tais comunicações serão utilizados o número de telefone celular e o e-mail constantes no cadastro atualizado.

6º Oficial R.T.D. e Civil de Pessoa Jurídica

**1852965**

**21. Cessão** - O **Cliente** e os **Devedores Solidários** declaram-se cientes de que o **Itaú** poderá, a qualquer tempo, ceder esta operação, total ou parcialmente, para empresa sob controle direto ou indireto do Itaú Unibanco Holding S.A., bem como para terceiros.

Local e data indicados na primeira página desta Cédula.

**Cliente** (qualificado na primeira página desta Cédula)

```
┌──────────────────────────────────┐
│ 6º Oficial R.T.D. e Civil de Pessoa Jurídica │
│          1852965                 │
│          MICROFILME              │
└──────────────────────────────────┘
```

Assinatura(s):

Nome(s) do(s) Representante(s) Legal(is) (por extenso):

Rene Toshiro Abe

**Devedores Solidários:**

1)

Nome
CPF/
Fone
Ende

6º Oficial de Registro de Títulos e Documentos e
Civil de Pessoa Jurídica da Capital - CNPJ: 45.565.314/0001-70
Radislau Lamotta - Oficial

| | |
|---|---|
| Emol. | R$ 3.929,82 |
| Estado | R$ 1.116,89 |
| Ipesp | |
| R. Civil | R$ 764,46 |
| T. Justiça | R$ 206,83 |
| M. Público | R$ 269,71 |
| Iss | R$ 188,64 |
| | R$ 82,36 |

Protocolado e prenotado sob o n. **1.853.019** em **06/09/2018** e registrado, hoje, em microfilme sob o n. **1.852.965**, em títulos e documentos. São Paulo, 06 de setembro de 2018

Total R$ 6.558,71
Selos e taxas
Recolhidos p/verba

Radislau Lamotta - Oficial
Antonio Vilmar Carneiro - Escrevente Autorizado

```
┌─────────────────┐
│      Itaú       │
│   A B O N A D O │
│   SÃO PAULO     │
└─────────────────┘
```

3) _____     4) _____
Nome:                           Nome:
CPF/CNPJ:                       CPF/CNPJ:
Fone:                           Fone:
Endereço:                       Endereço:

---

**Solução Amigável de Conflitos** - Consultas, informações e serviços transacionais acesse www.itau.com.br ou ligue 0300 100 7575, em dias úteis, das 8h às 20h ou fale com seu gerente. Reclamações, cancelamentos e informações gerais ligue para o SAC: 0800 728 0728, todos os dias, 24 horas por dia. Se não ficar satisfeito com a solução apresentada, de posse do protocolo, contate a Ouvidoria: 0800 570 0011, em dias úteis, das 9h às 18h. Deficiente auditivo/fala: 0800 722 1722, todos os dias, 24 horas por dia.

GNRE - validation certificate verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.

2162511

**Itaú Unibanco S.A.**

## AUTORIZAÇÃO PARA ALTERAÇÃO E MANUTENÇÃO DE DOMICÍLIO BANCÁRIO

| **1. Dados do Cliente** | | | |
|---|---|---|---|
| **1.1. Nome empresarial** | | | **1.2. CNPJ Nº** |
| RAKUTEN BRASIL FINANCIAL SERVI | | | 22.366.799/0001-77 |

| **2. Dados desta autorização** | | | |
|---|---|---|---|
| **2.1. Domicílio bancário a ser mantido** | | | |
| **2.1.1 Banco** | **2.1.2 Agência** | **2.1.3 Conta n.º** | **2.1.4. Bandeira** |
| 341 | ▉▉▉ | 15▉▉▉ | Master |
| | | | VISA |

2.2. Bandeiras:

( X ) Mastercard, Mastercard Maestro, Redeshop,  e outras bandeiras processadas pelas Credenciadoras que sejam por elas informadas ao **Itaú**;

(    ) Visa, Visa Electron e outras bandeiras processadas pelas **Credenciadoras** que sejam por elas informadas ao **Itaú**.

2.3. Prazo desta autorização
ATÉ FINAL E INTEGRAL LIQUIDAÇÃO DA OPERAÇÃO GARANTIDA

2.4. Data e local de emissão   01/08/2018 - SÃO PAULO, SP

**3.** O **Cliente** identificado no item 1 autoriza o **Itaú Unibanco S.A.**, com sede na Praça Alfredo Egydio de Souza Aranha, nº 100 - Torre Olavo Setúbal, São Paulo, SP, CNPJ n.º 60.701.190/0001-04 ("**Itaú**"), a:

(i) notificar a **Centralizadora**, qualificada no subitem 6.1, de que o **Cliente** formalizou operação financeira  com o **Itaú** vinculada a seus direitos de crédito, presentes e futuros, decorrentes de todas as transações com cartões de crédito e/ou débito das Bandeiras indicadas no subitem 2.2;

(ii) alterar, quando for o caso, o domicílio bancário atualmente vigente para o novo domicílio bancário indicado no subitem 2.1;

(iii) solicitar à **Centralizadora** a manutenção do domicílio bancário indicado no subitem 2.1, a partir desta data e até a data do subitem 2.3, relativamente a(s) espécie(s) de transação(ões) de crédito e débito, relativas às Bandeiras indicadas no subitem 2.2.

(iv) caso esse domicílio bancário esteja vinculado a cadeia centralizadora do **Cliente** (centralização do fluxo dos direitos de crédito de mais de uma pessoa jurídica do mesmo grupo societário e/ou econômico do **Cliente** em apenas um Domicílio Bancário), adotar todas as medidas necessárias perante a **Centralizadora** para a manutenção de todos os demais domicílios bancários do **Cliente** que estejam relacionados à mesma cadeia centralizadora, ainda que esses domicílios bancários não tenham sido expressamente indicados nesta autorização ou, na impossibilidade de manutenção de todos os domicílios bancários, solicitar à **Centralizadora** o desmembramento da cadeia centralizadora, para que seja possível a manutenção de domicílio bancário aqui indicada;

(v) adotar todas as medidas necessárias perante a **Centralizadora** para a manutenção de todos os domicílios bancários do **Cliente** que tenham os mesmos CNPJs (informados no Anexo I) no sistema da **Centralizadora**;

(vi) ter acesso a suas informações perante as **Credenciadoras** ou a **Centralizadora** relativas às transações débito e/ou transações crédito das Bandeiras indicadas no subitem 2.2; e

(vii) fornecer às **Credenciadoras** e à **Centralizadora** todas as informações e documentos relativos à operação financeira que ensejou esta autorização;

6º Oficial R.T.D. e Civil de Pessoa Jurídica

**1852965**

MICROFILME

4135624

(iii) se a operação financeira celebrada pelo **Cliente** puder ser renovada ou tiver seu vencimento em data superior a 36 (trinta e seis) meses, solicitar à **Centralizadora** a renovação da manutenção de domicílio bancário quantas vezes forem necessárias, até integral liquidação da operação financeira, independentemente da formalização de novo termo de autorização;

(ix) quando a manutenção de domicílio bancário prevista nesta autorização for constituída em conta vinculada a operação financeira contratada com o **Itaú**, solicitar à **Centralizadora**, a alteração do domicílio bancário para uma conta corrente de livre movimento, de sua titularidade, à qual a conta vinculada está relacionada;

(x) quando a manutenção de domicílio bancário prevista nesta autorização for constituída em conta corrente de livre movimento, solicitar à **Centralizadora** a alteração do domicílio bancário para uma conta vinculada a essa conta corrente, relacionada à operação financeira contratada com o **Itaú**.

4. Na hipótese de resilição ou rescisão de algum dos **Contratos de Credenciamento**, o **Cliente** autoriza a respectiva **Credenciadora** a continuar a efetuar o depósito dos créditos indicados no item 2 no domicílio bancário indicado no subitem 2.1 até a data indicada no subitem 2.3.

5. O **Cliente** e o **Itaú** reconhecem que: (a) a assinatura desta autorização é condição para que as **Credenciadoras** cumpram, concomitantemente, o **Contrato de Credenciamento** e o Contrato de Manutenção de Domicílio Bancário celebrado entre cada **Credenciadora** e Itaú; e (b) as **Credenciadoras** poderão exigir o cumprimento das obrigações aqui constantes nos termos dos artigos 436 e 437 do Código Civil.

6. O **Cliente** declara-se ciente de que:

(i) a manutenção de domicílio bancário indicada nesta autorização vinculará todas as transações relativas às Bandeiras indicadas no subitem 2.2, independentemente da **Credenciadora** responsável pela captura, pelo processamento e pela liquidação das referidas transações;

(ii) a manutenção de domicílio bancário, quando realizada com base na raiz do CNPJ (nove primeiros dígitos), vinculará automaticamente todos os demais números de CNPJ que contenham a mesma raiz e não tenham manutenção de domicílio bancário anterior;

(iii) na hipótese do item anterior, caso seja criado um novo CNPJ que contenha a mesma raiz aqui indicada, esse novo CNPJ também ficará vinculado a esta autorização;

(iv) as **Credenciadoras**, até a data do subitem 2.3, não celebrarão operação que vise a antecipação de créditos de ponto de venda cujo domicílio bancário esteja sujeito à manutenção, nos termos aqui indicados, salvo mediante prévia e expressa autorização do **Itaú**;

(v) transações de crédito e débito de qualquer das Bandeiras indicadas no subitem 2.2 poderão ser capturadas por uma mesma **Credenciadora**, por intermédio de um mesmo Equipamento;

(vi) a manutenção de domicílio bancário prevista nesta autorização será processada pelo **Itaú**, pelas **Credenciadoras** e pela **Centralizadora** em conformidade com as disposições da Convenção para Regulamentação e Proteção de Garantias de Recebíveis – "Sistema de Controle de Garantias", cujos termos e condições o **Cliente** declara conhecer.

6.1. Para os fins desta autorização, entende-se por: (a) **Credenciadora**: qualquer pessoa jurídica que credencia pessoas físicas ou jurídicas para aceitação de cartões de crédito ou débito como meios eletrônicos de pagamento na aquisição de bens ou serviços e que disponibiliza solução tecnológica ou meios de conexão aos sistemas dos credenciados para fins de captura e liquidação das transações efetuadas por meio de cartões de crédito ou débito; (b) **Equipamentos**: terminais eletrônicos ou outros aparelhos, dispositivos, sistemas de informática, programas de computador, utilizados pelo **Cliente**, para possibilitar a realização de transações de crédito e/ou débito; e (c) **Centralizadora**: Câmara Interbancária de Pagamentos – CIP - entidade responsável pela centralização do registro, processamento e transmissão de informações relativas à manutenção de domicílio bancário.

7. Uma vez assinada esta autorização, o **Itaú** poderá solicitar à **Centralizadora**, a partir desta data, a manutenção do domicílio bancário indicado no subitem 2.1, sendo responsável perante o **Cliente** pelo envio das informações relacionadas a tal manutenção de domicílio bancário.

24254-5 (Fl 2/4) This translation certificate was digitally signed by the Official Translator and Interpreter Sandra Mara Barretos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.

A manutenção de domicílio bancário somente poderá ser cancelada antes da data indicada no subitem 2.3 mediante notificação do **Itaú** à **Centralizadora**. A partir do dia útil seguinte ao cancelamento da manutenção de domicílio bancário conforme autorização do **Itaú**, ou da data de vencimento indicada no subitem 2.3, o **Cliente** poderá solicitar às **Credenciadoras** a alteração do domicílio bancário indicado no subitem 2.1.

α _____
**Cliente**

Dados dos representantes do **Cliente**:

Nome: _Rene Toshiro Alee_____          Nome: _____

CPF: _132 125_____ RG: _1654____          CPF: _____ RG: _____

Cargo: _CED_____          Cargo: _____

6º Oficial R.T.D. e Civil de Pessoa Jurídica

**1852965**

MICROFILME

Itaú
**ABONADO**
SÃO PAULO

**ANEXO I À AUTORIZAÇÃO PARA ALTERAÇÃO E MANUTENÇÃO DE DOMICÍLIO BANCÁRIO**
**RELAÇÃO DE CNPJS VINCULADOS**

| 22.366.799/0001-77 | |
| --- | --- |
| | |

This public translation certificate was digitally signed by the Official Translator ... Mattos Rudzit, JUCESP 1888. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.

## Comprovante de Inscrição e de Situação Cadastral

**Contribuinte,**

Confira os dados de Identificação da Pessoa Jurídica e, se houver qualquer divergência, providencie junto à RFB a sua atualização cadastral.

A informação sobre o porte que consta neste comprovante é a declarada pelo contribuinte.

**REPÚBLICA FEDERATIVA DO BRASIL**

**CADASTRO NACIONAL DA PESSOA JURÍDICA**

| NÚMERO DE INSCRIÇÃO<br>22.366.799/0001-77<br>MATRIZ | COMPROVANTE DE INSCRIÇÃO E DE SITUAÇÃO CADASTRAL | DATA DE ABERTURA<br>30/04/2015 |
|---|---|---|

NOME EMPRESARIAL
**RAKUTEN BRASIL FINANCIAL SERVICES LTDA**

| TÍTULO DO ESTABELECIMENTO (NOME DE FANTASIA)<br>******** | PORTE<br>DEMAIS |
|---|---|

CÓDIGO E DESCRIÇÃO DA ATIVIDADE ECONÔMICA PRINCIPAL
**82.91-1-00 - Atividades de cobranças e informações cadastrais**

CÓDIGO E DESCRIÇÃO DAS ATIVIDADES ECONÔMICAS SECUNDÁRIAS
**64.63-8-00 - Outras sociedades de participação, exceto holdings**
**74.90-1-04 - Atividades de intermediação e agenciamento de serviços e negócios em geral, exceto imobiliários**

CÓDIGO E DESCRIÇÃO DA NATUREZA JURÍDICA
**206-2 - Sociedade Empresária Limitada**

| LOGRADOURO<br>AV FRANCISCO MATARAZZO | NÚMERO<br>1500 | COMPLEMENTO<br>: NEW YORK TOWER; ANDAR: 6; SALA: 7; |
|---|---|---|

| CEP<br>05.001-100 | BAIRRO/DISTRITO<br>AGUA BRANCA | MUNICÍPIO<br>SAO PAULO | UF<br>SP |
|---|---|---|---|

| ENDEREÇO ELETRÔNICO<br>ADMINISTRATIVO@RAKUTEN.COM.BR | TELEFONE<br>(11) 3874-4600 |
|---|---|

ENTE FEDERATIVO RESPONSÁVEL (EFR)
*****

| SITUAÇÃO CADASTRAL<br>ATIVA | DATA DA SITUAÇÃO CADASTRAL<br>30/04/2015 |
|---|---|

MOTIVO DE SITUAÇÃO CADASTRAL

| SITUAÇÃO ESPECIAL<br>******** | DATA DA SITUAÇÃO ESPECIAL<br>******** |
|---|---|

Aprovado pela Instrução Normativa RFB nº 1.634, de 06 de maio de 2016.

Emitido no dia **30/08/2018** às **14:40:04** (data e hora de Brasília).                    Página: **1/1**

Consulta QSA / Capital Social                    Voltar

**Itaú**
**A B O N A D O**
**SÃO PAULO**

Preparar Página
para Impressão

A RFB agradece a sua visita. Para informações sobre política de privacidade e uso, underline{clique aqui}.
Atualize sua página

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.



## 6º Oficial de Registro de Títulos e Documentos e
## Civil de Pessoa Jurídica da Comarca de São Paulo

*Oficial: Radislau Lamotta*

Rua Benjamin Constant, 152 - Centro
Tel.: (XX11) 3107-0031 - (XX11) 3106-3142 - Email: 6rtd@6rtd.com.br - Site: www.6rtd.com.br

### REGISTRO PARA FINS DE
### PUBLICIDADE E EFICÁCIA CONTRA TERCEIROS

## Nº 1.852.965 de 06/09/2018

**Certifico e dou fé** que o documento em papel, foi apresentado em 06/09/2018, o qual foi protocolado sob nº 1.853.019, tendo sido registrado sob nº **1.852.965** no Livro de Registro B deste 6º Oficial de Registro de Títulos e Documentos da Comarca de São Paulo, na presente data.

**Natureza:**
CEDULA DE CREDITO

São Paulo, 06 de setembro de 2018

Antonio Vilmar Carneiro
Escrevente Autorizado

Este certificado é parte **integrante e inseparável** do registro do documento acima descrito.

| Emolumentos | Estado | Ipesp | Registro Civil | Tribunal de Justiça |
|---|---|---|---|---|
| R$ 3.929,82 | R$ 1.116,89 | R$ 764,46 | R$ 206,83 | R$ 269,71 |
| Ministério Público | ISS | Condução | Outras Despesas | Total |
| R$ 188,64 | R$ 82,36 | R$ 0,00 | R$ 0,00 | R$ 6.558,71 |



Para verificar o conteúdo integral do documento, acesse o site:
**servicos.cdtsp.com.br/validarregistro**
e informe a chave abaixo ou utilize um leitor de qrcode.

00171870202234346



Para verificar a autenticidade do documento, acesse o site da Corregedoria Geral da Justiça:
**https://selodigital.tjsp.jus.br**

Selo Digital
**1136544TIBE000003092CE18V**

**7307/09957 – 7**     **Seq:53**
BANCO ITAU – Q.A. – 23036 – 8

20.000.000,00
7307
09957 – 7 – Id Caixa Legado: 4687121
**Caixa SKP: 815261265 – ...**
IC. DO DOCUMENTO

**143051556**

$0000143051556



IF          143051556
**B325E**    **RET**    248308098 – 000001    **RT ID: 5A**
**BS-12-G1-1-AG-0018-J-01-04**  0103000600

**SKP:815261265 – 00046**    **CUST:4687121**
REF1 4687121                  NRM
7307/09957 – 7              Srv 02/12  4:00pm BR1    Para ·····
                                      JHONATAN JESUS SILV
Fax&Rel   7993553
**R**                                        **SCHD**

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F958-A527-613C-BD2E.

# PROTOCOLO DE ASSINATURA(S)

In order to verify the signature, click here https://www.portaldeassinaturas.com.br/Verificar/F958-A527-613C-BD2E or visit https://www.portaldeassinaturas.com.br:443 and use the code below to check if this document is valid.

## Código para verificação: F958-A527-613C-BD2E



**Hash do Documento**

C9A2CE0095568386111ED515937AA76FFB547114883246B14B7D55EEC37AF739

O(s) nome(s) indicado(s) para assinatura, bem como seu(s) status em 16/09/2021 é(são) :

☑ Sandra Regina Mattos Rudzit (Signatário) - 082.060.0      em
16/09/2021 14:18 UTC-03:00
**Tipo:** Certificado Digital

