UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>ITAÚ UNIBANCO S/A,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case No. 21 Misc._____ |

**DECLARATION OF HENRIQUE RODRIGUES FORSSELL IN SUPPORT OF**
***EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE**
**PURSUANT TO 28 U.S.C. § 1782**

I, the undersigned, Henrique Rodrigues Forssell, under oath and penalty of perjury, pursuant to 28 U.S.C. § 1746, and duly authorized, declare the following:

1. I am over the age of 18 and the facts set forth herein are based on my own personal knowledge or from information provided to me by others. Where facts are within my personal knowledge, I can affirm that they are true. Where the information is provided to me by others, I state the source of my knowledge and affirm it is true to the best of my information and belief.

2. I am an attorney with powers to act on behalf of Itaú Unibanco S.A. ("Applicant" or "Itaú"), the largest private bank in Brazil. I was called to the Brazilian Bar in 2004 and my practice includes a full range of Civil Litigation, including corporate disputes and asset recovery cases involving fraud. I am a founder partner of the law firm Duarte Forssell Advogados ("DFA").

3. I submit this Declaration in support of Applicant's application for an Order, pursuant to 28 U.S.C. § 1782, authorizing discovery in connection with a foreign bankruptcy proceeding pending before the 1st Special Lower Court for Judicial Reorganization and Bankruptcy in the Judicial District of São Paulo, Brazil (the "Bankruptcy Proceeding"), involving

the Japanese Rakuten companies and operations in Brazil (currently Gencomm group) ("Brazilian Rakuten Group" or "Gencomm Group")[1].

## I. FACTUAL BACKGROUND

### I.1. Rakuten – Brazilian Operation and the *Quota Purchase Agreement* with TOG Brazil

4. Rakuten Group is a Japanese technology conglomerate founded in 1997 that provides web-based services, mainly related to e-commerce, such as purchase and sale of goods on a virtual Internet-based trading platform and other e-commerce solutions. Rakuten Group started its operations in Brazil in 2011, with the acquisition of two Brazilian companies which were named Rakuten Brazil Holdings Ltda and Rakuten Brasil Internet Service Ltda. Subsequently, the Rakuten Group expanded its Brazilian operation with the incorporation of the companies Rakuten Marketing Brazil Ltda, on June 2013; Rakuten Brasil Financial Services Ltda, on April 2015; and, finally, Rakuten Brasil Logistics Ltda, incorporated on October 2017.

5. Rakuten Brazil Holdings Ltda (currently NexGenesis Holdings Ltda) was the Brazilian controlling company of the Brazilian Rakuten Group. It has as its corporate purpose the provision of consulting services for creation of virtual stores and online shopping centers and marketing activities by internet, as well as to hold participation in other companies.

6. Rakuten Brasil Financial Services Ltda (currently Gencomm Financial Services do Brasil Ltda.) has as its corporate purpose the provision of services related to the solution, collection, identification, and payments transactions, including, but not limited to, those made via the internet.

7. Rakuten Brasil Internet Service Ltda (currently Gencomm Internet Services do Brasil Ltda) is a company which purpose is to develop activities specifically in relation to: the

---

[1] Rakuten Brazil Holdings Ltda; Rakuten Brasil Internet Service Ltda; Rakuten Brasil Financial Services Ltda; and Rakuten Brasil Logistics Ltda.

2

development of software, IT technical support and maintenance of computer and database programs and scoring system management and control in operations carried out in the virtual environment, through the control and collection of payments.

8. Rakuten Brasil Logistics Ltda (currently Gencomm Logistics Services do Brasil Ltda) has as its main corporate purpose logistics consultancy, exploration of collection, shipping and delivery of goods, and the exploration of freight forwarding and intermediation services.

9. During the period in which the Rakuten Group operated in Brazil, several cash injections were made in the Brazilian Rakuten Group, mainly by the Japanese company Rakuten, Inc; and the Delaware companies Rakuten USA, Inc ("Rakuten USA"); Rakuten Marketing International, LLC; and Rakuten Brazil Holdings, LLC ("Parent Companies"), which together in the period between 2011 and 2019 summed approximately R$222 million.

10. Applicant granted credit facility to Rakuten Brasil Financial Services Ltda, in view of the involvement of the Japanese Rakuten group in the Brazilian operation[2].

11. On October 28, 2019, the Brazilian Rakuten Group announced the sudden sale of all its shares held in four of the five Brazilian companies to TOG Brazil Holdings, Inc ("TOG Brazil"), an entity incorporated and existing under the laws of Delaware, United States of America, with a registered office in the City of Dover, County of Kent, State of Delaware, at 850 New Burton Road, Suite 201, Zip Code 19904, that was incorporated on October 14, 2019 – the exact same day that Rakuten's Brazilian operations were transferred to it (Exhibit 1).

12. TOG Brazil is part of the Ten Oaks group - Ten Oaks Management, LLC (Exhibit 2); Ten Oaks Friar Common Investors, LLC (Exhibit 3); and Ten Oaks Friar Series B Investors,

---

[2] It is important to consider the magnitude represented by the Japanese group: as an example, according to the Corporate Report of the Rakuten group for the fiscal year of 2017, the Rakuten companies were present in 190 countries, its gross transaction value (GTV) overcame 12 trillion yen and the consolidated operation income for the period was around 150 billion Japanese Yen, equivalent to 1,372,823,622.111 US Dollars.

Corporativo | Interno

LLC (Exhibit 4). The shareholding and managing structure of TOG Brazil is exercised by its declared ultimate beneficial owners, Michael Hahn and Matt Magan[3].

13. On October 14, 2019, Rakuten Brazil Holdings Ltda and TOG Brazil, with the express approval of the parent company Rakuten USA, signed the *Quota Purchase Agreement* provided the sale to TOG Brazil of all the quotas (shares) of Rakuten Brasil Internet Service Ltda, Rakuten Brasil Financial Service Ltda and Rakuten Brasil Logistics Services Ltda, for the symbolic value of only $1.00 (one US Dollar) (a copy of the *Quota Purchase Agreement* is attached as Exhibit 5).

14. As can be verified by the 27th Amendment to the Articles of Incorporation of Rakuten Brazil Holdings Ltda's, Rakuten Inc, the main company of the Japanese Rakuten group transferred to TOG Brazil all of its shares of Rakuten Brazil Holdings Ltda, which had a register share capital of R$138,216,756.00 (Exhibit 6).

15. By the acquisition of the shares of Rakuten Brazil Holdings Ltda, TOG Brazil took full control of the companies Rakuten Brasil Internet Service Ltda., Rakuten Brasil Financial Services Ltda. and Rakuten Brasil Logistics Services Ltda. and renamed each of the entities, as previously highlighted, and the Brazilian Rakuten Group to "Gencomm group." Only Rakuten Marketing Brazil Ltda, the sole profitable enterprise, remained under the control of the Japanese Rakuten group.

16. The acquisition of the Rakuten Brazil Holdings Ltda's shares by TOG Brazil evidences the lack of interest of the Japanese Rakuten group in continuing the operations of the Brazilian Rakuten Group. Such acquisition was made suddenly and unilaterally, surprising Applicant and all other creditors.

---

[3] https://tenoaksgroup.com/team/ (last visited on September 27, 2021)

Corporativo | Interno

### I.2. Applicant's credit

17. Applicant is a creditor of the Brazilian Rakuten Group, currently Gencomm Group, as it extended the main credit line to those companies, especially to Rakuten Brasil Financial Services Ltda, one of the Gencomm Group entities, later named Gencomm Financial Services do Brasil Ltda ("Gencomm Financial").

18. On August 1st, 2018, a financing agreement was signed between Applicant and Gencomm Financial (at the time, Brazilian Rakuten Group), with a total credit line of R$ 20 million, guaranteed by *Credit and Debit Card Receivables* also name of Gencomm Financial. Since then, the credit product "Monthly Hot Account", represented by a contract, was automatically renewed accordingly to its terms, unless there was an increase in the credit line, because in this situation, the parties would need to sign a new contract only to follow internal requirements of Itaú (a copy of the financing agreement and its *Credit and Debit Card Receivables* are attached as Exhibit 7 and Exhibit 8).

19. The last increase of the credit line occurred on August 6, 2019, approximately two months before all the Brazilian Rakuten Group's operations in Brazil was sold to TOG Brazil for $1.00. In that occasion the credit limit was raised to R$65 million. This last renewal is represented by a bank's credit certificate, which, under Article 28 of Law N. 10.931/2004, is considered an enforceable instrument as it represents a certain and liquid debt. However, every renewal operation has always been bonded by the main contract "Monthly Hot Account," which was signed by the parties in 2018.

20. On the date of acquisition of the Rakuten Group Brazilian operation by TOG Brazil, October 10, 2019, the outstanding balance of Applicant's line of credit was approximately R$49.1

5

million and a few days later, on October 31, 2019, the debt increased to 52.1 million Brazilian Reais.

21. In order to maintain the credit line, Ten Oaks group offered a "Comfort Letter" to Applicant, assuring that it would put its best efforts to ensure the payment of the credit, in which it affirmed that the Ten Oaks group's policy is "*that of close supervision of both their financial and technical aspects with a view to ensuring that such companies have sufficient financial resources, either by means of capital or otherwise, to enable them to complete the project or projects upon which they are engaged.*" (Exhibit 9).

22. The Applicant made several requests to Ten Oaks group to analyze the possibility of preserving the credit line. It was requested to Mr. Michael Hahn to present: a Stand-by Letter of Credit (SBLC) provided by a trusted U.S. bank able to cover the minimum amount of Itaú's collateral gap; a schedule of capital injection; the balance sheet from all companies that the Ten Oaks' families have participation, including Ten Oaks Equity Holdings and Material Holding; corporate documents and ownership documents among other requirements that were never met.

23. Considering the fact that the acquirers did not cooperate with the requested information, as well as fail to honor the debt, Applicant sent an extrajudicial notification to inform that they would not renew the credit line and, therefore, the constitution in arrears of the Rakuten Brazilian Group due to the lack of payment of the contract n.11478-000730700346242 (Monthly Hot Account – Card Receivables).

24. Nowadays, the debt owed to Applicant is currently listed in the Bankruptcy Proceeding for R$87,412,349.924 million. Despite the amount listed by the Judicial Administrator, it is worth mentioning that Itaú is disputing that this amount is correct in the bankruptcy proceeding, pending a final decision by the bankruptcy judge. Itaú Unibanco S.A. holds the largest

Corporativo | Interno

credit against the Gencomm Group and, therefore, is an interested party in adopting measures that could help to satisfy its credit, specially the search for information that could reveal third parties liable for the debts.

## II. THE PENDING FOREIGN PROCEEDING AND FOREIGN TRIBUNAL

25. Only 3 months after the acquisition of the companies, on February 3, 2020, the Gencomm Group filed a request for joint judicial reorganization of the four Brazilian entities[4], arguing that the companies were never profitable; at the time of the purchase, TOG Brazil was convinced that the companies "*would become profitable and financially viable, after due restructuring*" and, supposedly, only after taking over the companies' activities, it was found that the financial difficulties of the Brazilian Rakuten Group were larger than previously estimated.

26. However, it appears that the sale of the Brazilian Rakuten Group's operations to TOG Brazil was conducted without any audit process or due diligence, which was highlighted by the Judicial Administrator in its report to the court.

27. The Brazilian bankruptcy court granted the Judicial Reorganization on February 7, 2020, and, in the same order, appointed Expertise Mais Serviços Contábeis e Administrativos as the Judicial Administrator.

28. On April 5, 2020, only two months after filing for reorganization, even before publishing the list of creditors and before working on a reorganization plan, the Gencomm Group filed a petition for an order converting the reorganization proceeding to a liquidation. Thus, on April 13, 2020, the Brazilian bankruptcy court converted the Gencoom Group reorganization to a liquidation proceeding (a copy of the Brazilian Bankruptcy judgment is attached as Exhibit 10).

## III. NATURE OF THE DISCOVERY SOUGHT

---

[4] As said, Brazil Holdings Ltda; Rakuten Brasil Internet Service Ltda; Rakuten Brasil Financial Services Ltda; and Rakuten Brasil Logistics Ltda.

Corporativo | Interno

29. Considering the events described above, it appears that the operations of the Brazilian Rakuten Group sold to TOG Brazil were completely abandoned by Rakuten Group, to the detriment of its creditors, which were led to believe that the debt would be managed by the Japanese Rakuten group and TOG Brazil.

30. The first evidence is that at the time of the sale of the Brazilian Rakuten Group's operations to TOG Brazil, despite the fact that such operations were surpassing an economic and financial crisis, the frequent cash injections made in the Brazilian subsidiaries by the parent companies demonstrated the group's economic power and commitment to develop the business, therefore, the low credit risk. In addition, the magnitude of the Japanese economic group is unquestionable, considering that from 2000 to 2020, the group reported revenue growth, which achieved 1,455,538 trillion yens for the fiscal year of 2020.

31. In addition, the Japanese Rakuten group has a global presence, operating worldwide, which demonstrates its know-how in its segment and, consequently, gave greater security to Itaú in offering the credit line. Therefore, taking into consideration the international know-how of Rakuten Group and the direct involvement of the Japanese Rakuten group in its Brazilian's operations, what can be confirmed by the frequent cash injections made by the Parent Companies, the continuation of the Rakuten operations in Brazil was not a major concern to its creditors.

32. However, the sudden sale of the Brazilian operations to TOG Brazil was made in an unusual mode, with an attribution of a symbolic value of $ 1.00, which imposes the need for a more accurate analysis of the facts that encompass such a transaction.

33. It appears that the continuation of the Rakuten Group's activities in Brazil was due to constant capital injections that were repeatedly made by Rakuten USA, Inc and Rakuten, Inc,

Corporativo | Interno

as this fact was highlighted by the Judicial Administrator in its report to the court. It is thus fair to assume that TOG Brazil was aware that capital would be required to restructure the Brazilian operations. However, it appears that no capital injection was ever made by TOG Brazil.

34. Another relevant point, besides the lack of capital injection after the purchase, was that the Gencomm Group's operations in Brazil were never properly taken over by TOG Brazil, considering that the Judicial Administrator reported to the bankruptcy court that Mr. Mike Hahn has never assiduously participated in the management of the companies, neither did the administrator appointed on the records, Ms. Elaine Oliveira Zucchi, who was just a nominee who never managed the companies, including that she never attended meetings organized by the Judicial Administration during the judicial reorganization process.

35. Another strong indication of the lack of desire to continue the business activity relies upon the fact that, on October 28, 2019, the Gencoom Group had 175 employees. After that date through the Bankruptcy date, the Gencomm Group dismissed 168 employees, with the largest volume of these dismissals occurring soon after Ten Oaks bought those companies, in November 2019, with a total of 73 dismissals.

36. Therefore, all Brazilian non-profitable operations were sold to TOG Brazil for only $1.00. Only three months after the sale, without making any clear efforts to improve its chances of success, the Gencomm Group filed for a joint judicial reorganization and, two months after that, again, showing no commitment, the companies requested to convert its judicial reorganization to liquidation.

37. The real facts and reasons behind TOG Brazil's acquisition of the Brazilian Rakuten Group are unclear. The Applicant did not receive accurate information related to those transactions; however, the facts stated above indicate that sellers and buyer intended to avert any

9

responsibility from Rakuten's former shareholders (Rakuten, Inc and Rakuten USA, Inc), since all the measures adopted (or the lack thereof) lead to its fast bankruptcy.

38. If it is proven that those measures were taken with the clear intention to harm creditors, in a fraudulent collusion to avert the liability of the parent companies of the Brazilian Rakuten Group for the debt, all acts performed can be revoked by the Judge of the Bankruptcy proceeding, as set out in article 130 of Brazilian Law N. 11.101/05.

39. Based on the elements described above, the search for evidence and further information about what really happened concerning the downfall of the Brazilian Rakuten Group is essential to creditors, and Applicant in particular, to determine what legal measures can be filed in the Bankruptcy Proceeding, or whether there exists new measures available to Itaú outside the bankruptcy court.

40. Applicant seeks assistance from the United States District Court of Delaware, where TOG Brazil and the Ten Oaks group (Ten Oaks Management, LLC; Ten Oaks Friar Common Investors, LLC; and Ten Oaks Friar Series B Investors, LLC) are incorporated[5], to obtain relevant and probative documentary evidence, as recorded negotiations, communications, transfers and related documents, from them regarding those transactions between TOG Brazil, the Brazilian Rakuten Group, Rakuten, Inc and Rakuten USA, Inc ("Discovery Targets"), especially to obtain information about the background of the *Quota Purchase Agreement* signed by those companies, given the lack of due diligence on the purchase and the apparent negligence on the restructuring of the Brazilian Rakuten Group .

41. I am advised by New York counsel that the Respondents, from whom discovery is sought, reside, or are found in the Districts of Delaware, within the meaning of 28 U.S.C. §1782.

---

[5] Cogency Global Inc., the registered agent of Ten Oaks Management, LLC, Ten Oaks Friar Series B Investors, LLC and Ten Oaks Friar Common Investors, LLC, is located at 850 New Burton Road, Suite 201, Dover, Delaware

Corporativo | Interno

42. The Respondents are not expected to become a party to the Bankruptcy Proceedings. As such, this Application constitutes the only practical and timely method for obtaining the needed evidence for use there. Indeed, absent the instant Application, the complete evidence would almost certainly remain outside the reach of the Applicant and possible filling related to the ongoing liquidation before the Brazilian bankruptcy court.

43. Further, there is no indication that the Brazilian bankruptcy court or other Brazilian civil courts would not be receptive to the documentary evidence sought through the instant Application. Such evidence is likely admissible in the Brazilian courts, as they have no jurisdiction over non-parties to begin general discovery abroad. The Application does not circumvent any proof-gathering restriction under the Brazilian laws.

44. The discovery sought to be served on Respondents is not intrusive or unduly burdensome because it is of limited scope. Applicant seeks limited records relating to the *Quota Purchase Agreement* signed between TOG Brazil, Inc and the Brazilian Rakuten Group, with Rakuten USA, Inc as a consenting part, for the limited period beginning in January 2019 to the present. This period is likely within the Respondents' document retention policies and the documentary evidence sought is of the type that Respondents regularly and easily retrieve and produce as third parties or actual parties in litigation.

## IV. CONCLUSION

45. In light of the foregoing, Applicant respectfully submits that all of the requirements of 28 U.S.C. § 1782 are met:

   a. The Respondents reside and/or are found in this District;

   b. Applicant is an "interested person" within the meaning of the statute; and

Corporativo | Interno

    c. Applicant seeks to obtain documents and testimony for use in a foreign proceeding.

46. To my knowledge no previous application for this relief has been made in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 04thday of October, 2021, in São Paulo, Brazil..

By: *[signature]*

Corporativo | Interno